**Rickey Lee BRADLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56475.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 26, 1980.

---

Melvyn Carson Bruder, Dallas, for appellant.

Henry M. Wade, Dist. Atty. and John H. Hagler, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from an order revoking probation. Appellant's probation was revoked after the trial court judicially noticed the record of a murder trial previously held before him. On appeal, it is contended that the evidence was insufficient to support the court's revocation order. In a prior opinion we held that the trial court properly noticed the record in the murder trial. *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978). See *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr.App.1973). We abated the appeal, however, so that the murder trial record judicially noticed might be forwarded to this Court for the purpose of aiding in the disposition of appellant's challenge to the sufficiency of the evidence. Since the transcription of the court reporter's notes of that murder trial is now before us, we proceed to consider appellant's contentions.

We turn first to appellant's argument that the record was supplemented improperly in that the State was permitted, after abatement, to suggest that the trial court take judicial notice that appellant was represented by the same attorney at both the murder trial and the later revocation hearing.

Appellant acknowledges our statement in *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr. App.1977) that a record may be supplemented after it has been approved. He contends, though, that "... the State seeks to add to the record in this case ... new evidence ... not developed at the revocation hearing ...." We find no merit in appellant's argument.

■ Subsequent to the abatement of this appeal, the trial court took judicial notice that appellant was represented by the same attorney at both proceedings. In support of this assertion the State introduced a certified copy of a docket sheet of a prior proceeding reflecting appellant's representation by one Steve Sumner. Appellant objected to the introduction of this docket sheet on the ground that "it constituted new evidence." In response to appellant's objection the court said, "[i]t was my intention to take judicial notice of everything that had to do with it ... all of the documents and papers and pleadings and participants and all that." Moreover, we have before us the statements of facts in both the revocation proceeding and the murder trial noticed therein. It appears to us that Steve Sumner represented the appellant in both causes. Accordingly, we overrule appellant's contention that the record was improperly supplemented. Therefore, though we do not at this time decide whether it is necessary as a matter of law under the Barrientez rule, that counsel in both the revocation proceeding and the prior trial judicially noticed therein be the same, we find that, under the circumstances of this case, the evidence is ample that appellant was, in fact, represented by the same attorney at both proceedings.

Though both parties take it for granted that *Barrientez* requires that the attorney in both proceedings be the same, we cannot, by any means, agree. Certainly, the matter was not even mentioned in *Barrientez.* This modification of the *Barrientez* rule seems to have had its origin in *Stephenson v. State*, 500 S.W.2d 855 (Tex.Cr.App.1973) wherein Judge Morrison noted, "... the same attorney who had by appointment represented [Stephenson] represented him at the revocation of probation hearing." *Id.* at 856. Whether or not this observation was essential to the holding of Stephenson is unclear. That the *Barrientez* rule was so modified is suggested by the concurring opinion in *Green v. State*, 528 S.W.2d 617, 619 (Tex.Cr.App.1975). Likewise, in *O'Hern v. State*, 527 S.W.2d 568, 570 (Tex.Cr.App. 1975) (Onion, P. J., concurring) it was suggested, incorrectly, that Barrientez stood for the proposition that the attorney in both proceedings must be the same and that Stephenson so held.

■ In effect, then, the question of whether or not the attorney in both proceedings must be the same has not been resolved. That such a requirement poses difficulty in the application of the *Barrientez* rule cannot be gainsaid. One can readily imagine situations wherein representation by the same attorney might not be possible or practicable. We are, therefore, unwilling to impose an inflexible rule requiring the presence of the same attorney at both proceedings. If, as we hold it does, the *Barrientez* rule remains a viable rubric of procedure in these matters, no denial of due process occurs where the new attorney in the revocation proceedings has before him the record of the trial in the noticed proceedings.

We turn now to appellant's contention that the evidence was insufficient to support the court's order revoking his probation. Appellant asserts that there was a fatal variance between the State's pleading and proof in that it was alleged that he caused the death of the victim by "hitting him on the head with a hammer" whereas the proof established that the victim died of a knife wound.

Appellant was alleged to have violated condition (a) of his probation in that he "commit[ted] an offense against the laws of this State . . .; (On or about the 25th day of January, 1976, in Dallas County, Texas, Rickey Lee Bradley did then and there intentionally and knowingly cause the death of an individual, Dwaine Barnes, by hitting him on the head with a hammer.)" Appellant's contention appears to be that there is a fatal variance between the allegation in the motion to revoke and the evidence introduced at the trial judicially noticed because the medical examiner testified that the actual cause of Barnes' death was a stab wound to the chest. Notwithstanding this, we note that the State alleged that appellant committed an offense against the laws of the State of Texas.

At trial, appellant admitted that he assaulted the deceased with a knife. He testified that this assault was a response to Barnes' attempt to choke him. Appellant did not, though, deny striking the deceased with a hammer. The medical testimony established that the deceased received injuries to the back of the head and that his hands bore the marks of defensive wounds. A claw hammer covered with blood was recovered at the scene. It was admitted into evidence without objection. Moreover, as we have said, appellant admitted stabbing the deceased with a knife.

■ Where the State alleges a violation of a condition requiring the probationer to refrain from violating the law, it is not necessary that such an allegation be in the same precise terms as would be necessary in an indictment allegation. It is sufficient that a violation of law be alleged and that fair notice be given to the probationer. Chacon v. State, 558 S.W.2d 874, 876 (Tex.Cr.App.1977); Davila v. State, 547 S.W.2d 606, 609 (Tex.Cr.App.1977). In this case, appellant was alleged to have violated the law and a description of the offense was added to apprise him of the name of the victim of the offense and the manner in which it was committed. That there was expert testimony that death actually resulted from the application of one and not the other weapon used in the attack is not such a variance between pleading and proof as is fatal under the circumstances of a hearing on a motion to revoke probation at which the defendant admitted using both weapons. We hold that, in this case, the evidence was sufficient to support the revocation of appellant's probation and overrule his contentions to the contrary.

■ Appellant asserts also that the evidence to support the revocation of his probation was insufficient because the trial court made "no oral or written specific or detailed findings of fact and conclusions of law regarding the basis for his order . . . ." First of all, appellant made no request for specific findings of fact and conclusions of law. Moreover, the evidence adduced at the prior trial, reviewed above, indicates that there was no abuse of discretion in the court's finding that appellant had, indeed, violated condition (a) of his probation. This ground of error is overruled.

In a multifarious assignment of error, appellant argues that the application of the Barrientez rule and the supplementation of the record in this case are offensive to the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States. See Article 40.09(9), V.A.C.C.P. Appellant, on the one hand, admits that the doctrine of collateral estoppel does not prevent the revocation of his probation for the commission of an offense even though a jury hung on the issue of his guilt in a prior trial therefor. Even though he admits that collateral estoppel has no application in this case, appellant would have us hold that, "the doctrine must be considered if it is applied with realism and rationality and in conjunction with other principles" guaranteed by the due process clauses. According to appellant, "[c]ollateral estoppel prohibits the State from using the same evidence which was insufficient to convince a jury that the defendant committed the murder to convince a judge in revocation proceedings of the same ultimate fact, i. e., that the defendant committed the murder." He states that, "this court must now deal with the propositions (1) that it is constitutional er-

ror to deprive a person of his liberty upon proof which does not satisfy the beyond a reasonable doubt standard and (2) that it is constitutional error to retry an accused after there has been a determination that the evidence is insufficient to sustain a conviction. *Sanabria v. United States*, [437 U.S. 54] 98 S.Ct. 2170 [57 L.Ed.2d 43] (1978); *Greene v. Massey*, [437 U.S. 19] 98 S.Ct. 2151 [57 L.Ed.2d 15] (1978); *Burks v. United States*, [437 U.S. 1] 98 S.Ct. 2141 [57 L.Ed.2d 1] (1978)."

■■■ We reject appellant's contention that it was constitutional error to order his probation revoked based on the trial court's consideration of an offense of which a jury in a prior trial had not found appellant guilty beyond a reasonable doubt. A probation revocation hearing is simply not a criminal prosecution and the degree of proof required to establish the truth of the allegation in a motion to revoke probation is not the same as that in a criminal trial. *Russell v. State*, 551 S.W.2d 710, 714 (Tex.Cr.App. 1977), cert. den. 434 U.S. 954, 98 S.Ct. 480, 54 L.Ed.2d 312 (1977); *Scamardo v. State*, 517 S.W.2d 293 (Tex.Cr.App.1975). Because it is necessary only that the truth of the State's allegations in a motion to revoke probation be established by a preponderance of the evidence rather than beyond a reasonable doubt as in a criminal trial, the cases cited to us by appellant are inapposite. We decline his invitation to declare the higher standard of proof applicable to revocation proceedings. See *Kelly v. State*, 483 S.W.2d 467 (Tex.Cr.App.1972). Neither do we agree that the application of the *Barrientez* rule is a denial of the right to effective assistance of counsel and confrontation of witnesses. See *Stephenson v. State*, 500 S.W.2d 855 (Tex.Cr.App.1973). This ground of error is overruled.

Finally, we consider appellant's argument that the evidence is insufficient to support the court's order revoking probation "because the State did not disprove the issue of self–defense which the State introduced into evidence at the murder trial."

■■ Appellant's argument concerns his extrajudicial confessions wherein he admit-

ted the assault on the deceased but sought to explain it in terms of self–defense. Our review of the record of the murder trial supports the state's contention that the confessions in question were not admitted into evidence before the jury at the trial proper, though they had been admitted at a pretrial hearing. We find, further, that appellant testified at the trial to the same facts found in these extrajudicial confessions. Accordingly, it was within the province of the trial court, at the subsequent revocation hearing, to assess the credibility of appellant's testimony and he might properly have chosen to disbelieve the exculpatory explanation for the fatal assault. No error is shown.

The judgment is affirmed.

DALLY, J., dissents.

ONION, Presiding Judge, dissenting.

Sires who beget unnatural creatures of decisional law never seem to lose their fatherly or protective instincts regardless of the continuing confusion, delay and injustice that follows in the ever–growing wake of their offspring. The instant case presents an interesting example of this fact. The revocation of probation in this cause occurred on September 2, 1976. Here, over four years later, we are still trying to unravel the questions surrounding the revocation merely because of the trial court's use of the "judicial notice" hatched by *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr.App. 1973).

When this cause was abated on original submission, 564 S.W.2d 727 (Tex.Cr.App. 1978), I wrote in my dissent that:

"The chickens hatched by *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr.App.1973), are coming home to roost."

I would now add that the chickens have been roosting so long the chicken house needs to be cleaned out and *Barrientez*, along with other refuse, thrown away.

In *Barrientez*, the majority of this court held that in a revocation of probation proceeding the trial judge could, over objection, take "judicial notice" of the testimony

of a prior trial conducted before him for the purpose of supporting the allegations of the revocation motion.

This was done although it was well established that while a court may take judicial notice of its own orders in a previous hearing between the same parties on the same subject, the court cannot take judicial notice of the testimony heard before it on another trial and enter independent judgment thereon. See the dissenting opinion in *Barrientez* at p. 477 and cases there cited.

Further, it was noted in the dissent that the majority in *Barrientez* failed to explain just how this court could review the sufficiency of the evidence in a probation revocation hearing when the trial court takes "judicial notice" of the testimony of a prior trial and that "testimony" is not part of the record on appeal from the revocation order. Further, *Barrientez* failed to explain the lack of a predicate required by Article 39.-01, V.A.C.C.P., to authorize the use of testimony of a witness from a prior case. Since the *Barrientez* opinion was also silent as to the effect of the holding upon the effective assistance of counsel at the revocation hearing, the dissent raised the question of whether the *Barrientez* rule applied unless defense counsel was the same at the prior trial and the revocation hearing.

The only reason given for the establishment of the new rule in *Barrientez* was the unreasonable burden upon the State to produce the same witnesses at the revocation hearing as at the prior trial.[1]

*Barrientez* was followed in cases like *Stephenson v. State*, 500 S.W.2d 855 (Tex.Cr.

App.1973); *O'Hern v. State*, 527 S.W.2d 568 (Tex.Cr.App.1975); *Green v. State*, 528 S.W.2d 617 (Tex.Cr.App.1975); *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978); and *Cleland v. State*, 572 S.W.2d 673 (Tex. Cr.App.1978); *Torres v. State*, 595 S.W.2d 537 (Tex.Cr.App.1980) (panel opinion); *Bailey v. State*, 543 S.W.2d 653 (Tex.Cr.App. 1976); *Haile v. State*, 556 S.W.2d 818 (Tex. Cr.App.1977); *Broussard v. State*, 598 S.W.2d 873 (Tex.Cr.App.1980) (En banc).

In *Barrientez* and *Green* and others, it was obvious that what the majority was doing was looking to appellate records of trials resulting in convictions which were independently appealed to this court to see if there was testimony there to support the revocation of probation where the testimony "judicially noticed" was not in the appellate record of the appeal from the order revoking probation. The opinions in *Barrientez* and *Green*, etc., were silent as to such action despite the fact that in *Cain v. State*, 468 S.W.2d 856, 861 (Tex.Cr.App. 1971), this court, speaking through Judge Roberts, wrote:

"The fact *that in the event of an appeal* this Court may find another appellate record which may supply the deficiency in the predicate is not controlling. The rule announced in 23 Tex.Jur.2d, Evidence, § 29, p. 51, was never intended to be used in this fashion."

It is clear that this court cannot look to another appellate record to supply any deficiency in proof in a case under consideration on appeal. See 1 Ray, Texas Practice, Law

---

1. This reasoning was reiterated in footnote # 3 of *O'Hern v. State*, 527 S.W.2d 568 (Tex.Cr. App.1975). The majority in the instant case on original submission, *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978), recognized the shortcomings of the basis for the *Barrientez* rule and tried to find justification for the rule, not on the original basis, but "in light of special considerations surrounding the revocation proceedings," at p. 729. Such "justification" merely listed some of the inroads made previously upon the procedural safeguards in revocation hearings as though one inroad justified another, while at the same time paying lip service to the proposition that due process is applicable to revocation proceedings. Such "justification" is simply more of the "anything goes" approach so long as it is a revocation of probation proceeding that is involved. See the dissenting opinions in *Casarez v. State*, 468 S.W.2d 412, 414 (Tex.Cr.App.1971); *Barnes v. State*, 467 S.W.2d 437, 441 (Tex.Cr.App.1971). Although an individual's liberty is involved, the majority's attitude towards revocation of probation as a lesser and insignificant proceeding prompts some prosecutors and some trial courts to constantly look for shortcuts in handling the same, sometimes to save five, 10 or 15 minutes, but which results in delays of years. Today's case bouncing around in the judicial system for four years is a good example.

of Evidence, § 186, p. 236. *Cain v. State*, supra; *Barrientez v. State*, supra (dissenting opinion), and authorities there cited.

In *Bradley* I at p. 732, the majority finally came out of the closet and, without admitting its past actions, placed its stamp of approval upon such procedure by saying that if the testimony "judicially noticed" in a revocation proceeding is properly identified in the appellate record then this court will take "judicial notice" of such testimony if it is found in another appellate record before this court. This, of course, is not "judicial notice." Thus, we have improper judicial notice piled upon improper judicial notice. And finally *Cleland v. State*, supra, a panel opinion, made no bones about the fact that the testimony in another appellate record had been examined to determine the sufficiency of the evidence to support a revocation order where "judicial notice" had been taken of such testimony but where it had not been included in the appellate record before this court on the appeal from the order revoking probation.

*Bradley* I, however, presented another problem. The testimony "judicially noticed" was from a trial which apparently had resulted in a hung jury. The testimony was not in the record before this court, and since the earlier trial had resulted in a hung jury there was no other appellate record before this court to examine for such "judicially noticed" testimony.

Faced with this situation, the majority wrote:

"We abate this appeal with directions that the State have reduced to writing, and then present to the trial court for approval as a supplemental appellate record, the court reporter's notes of the testimony judicially noticed at the revocation hearing.[2]

The *Bradley* revocation occurred on September 2, 1976. The appellate record was filed here on October 12, 1977. The opinion abating the appeal was handed down en banc on April 5, 1978 and the motion for leave to file for rehearing was denied May 3, 1978. Since the abatement the record reflects that a statement of facts was filed in this court of a prior murder case. For some unexplained reason, the reinstated appeal was referred to a panel rather than to the court en banc. On November 8, 1978, Panel No. 2, 4th Quarter, in a per curiam opinion again abated the appeal because the said statement of facts was labeled to be that of trial court Cause No. F–76–1545–LJ[3] and so certified to be by the court reporter and trial judge, and the record showed that the testimony the judge took "judicial notice" of was that in trial court Cause No. F–76–1545–NJ. The per curiam panel opinion again requested the testimony of which the trial judge had taken "judicial notice."

On December 20, 1978, the trial court conducted a hearing stating it was doing so at the request of the Court of Criminal Appeals in order to clarify the cause number. Of course, nothing in the opinion of November 8, 1978 mentioned a hearing. Be that as it may, a hearing was held, but it did not serve to remove all confusion, and the record of the brief hearing did not reach this court until January 17, 1980, more than a year later.

At the hearing Sandra Day, a court reporter, testified she took and transcribed the testimony "in a prior hearing" on July

---

**2.** The majority apparently felt that this abatement was a ticket for this trip and for this trip only. It wrote:

"In abating this case we neither encourage nor suggest that the State in future cases of a similar posture should allow submission of the appeal without identification of the facts judicially noticed, with the expectation that an abatement may be ordered to allow perfection of the record. The number of abatements by this Court is already a considerable burden on the criminal justice system, an l

where adequate alternatives are available we will not add to that burden. In cases such as this adequate alternatives are available, and in future cases one of the procedures hereinafter described should be followed."

It will be interesting to await the arrival of another appeal in the same posture as *Bradley* I.

**3.** F–76–1545–LJ is shown to be the trial court number of the revocation of probation proceedings.

6, 1976, involving Rickey Bradley, whom she identified as being present in the courtroom. She was then asked:

"Q. ... Do your notes there indicate what the cause number in that cause was in which you took the testimony?

"A. Yes. The first cause number that the Judge says, F–76–1545–NJ."

Thereafter, she identified State's Exhibit No. 1 as the statement of facts in said "prior hearing." Said exhibit was admitted into evidence over objection. She then admitted the cause number on said exhibit "F–76–1545–LJ" was not correct and should have read "F–76–1545–NJ." The reporter then identified State's Exhibit No. 2 as a certification which she had signed. The State then offered the "top portion" of State's Exhibit No. 2, and the objection was sustained. The bottom portion of State's Exhibit No. 2 was never offered or admitted, though the trial judge later made reference to the bottom portion of said exhibit as containing his findings. Neither State's Exhibits Nos. 1 or 2 of said hearing is in the record before this court. Whether State's Exhibit No. 1 is the same as the statement of facts filed in this court on July 20, 1978 marked as Cause No. F–76–1545–LJ, we have no way of knowing. Under the circumstances, it is not possible to compare said State's Exhibit No. 1 with the statement of facts received earlier.

Nevertheless, despite the condition of the record, the appeal has been reinstated by the majority who have now decided to utilize the statement of facts received earlier in passing on the evidence to sustain the allegations of the revocation motion without mention of the absence of the exhibits.

It is observed that the revocation motion in its only count alleged that the appellant violated his probationary conditions by causing the death of the named deceased "by hitting him on the head with a hammer." There was never an attempt to amend said motion.

4. Neither the indictment nor its allegations in other form are in the appellate record before this court.

The statement of facts from the prior murder trial[4] apparently used by the majority, shows the medical examiner testified that the cause of the death of the deceased was a stab wound to the chest inflicted by a knife. The appellant testified the deceased, his roommate, who had been drinking heavily, attacked him and began choking him and that he (appellant) stabbed the deceased with a knife, but that the deceased gained control of the knife and a board and continued to attack, and that in self–defense he (appellant) picked up a hammer and hit the deceased. There was no skull fracture but tears on the scalp and hands of the deceased were consistent with blows by a hammer according to the medical examiner although these blows were not the cause of death.

Even if the statement of facts before this court can now be considered, it does not support the allegations of the revocation motion that the appellant killed the deceased by hitting him on the head with a hammer. The majority, however, holds that where death resulted from a different weapon than that alleged no variance is presented between the pleading and proof in a revocation hearing where defendant admitted using both weapons even though the weapon alleged did not cause the death. This is pure baloney.

In *Bell v. State*, 196 S.W.2d 923 (Tex.Cr. App.1946), it was held that where the indictment avers means or instrument with which the killing was accomplished, the means or the instrument must be proved as alleged. And where the indictment alleged that he did "strike, wound and bruise" the prosecutrix with a "gun" with intent to murder her, but the State's evidence showed that the defendant struck the prosecutrix one blow with the stock of a gun which had been broken from the barrel of a gun, and which was merely equivalent to a piece of wood, the court should have given defendant's requested jury instruction on the ground of variance. See also *Ferguson*

*v. State*, 4 Tex.App. 156 (1878). Still further, allegations in an indictment of means by which assault was committed, though unnecessary, must be proven substantially as alleged. *Burrell v. State*, 526 S.W.2d 799 (Tex.Cr.App.1975).

Allegations in a motion to revoke probation need not strictly comply with requirements of an indictment but should fully inform the probationer so that he and his counsel will know what he will be called upon to defend against. *Wilcox v. State*, 477 S.W.2d 900 (Tex.Cr.App.1972); *Grantham v. State*, 547 S.W.2d 286 (Tex.Cr.App. 1977). *Leyva v. State*, 552 S.W.2d 158 (Tex. Cr.App.1977); *Peoples v. State*, 566 S.W.2d 640 (Tex.Cr.App.1978); *Chacon v. State*, 558 S.W.2d 874 (Tex.Cr.App.1977). See also *Kuenstler v. State*, 486 S.W.2d 367 (Tex.Cr. App.1972); *Dempsey v. State*, 496 S.W.2d 49 (Tex.Cr.App.1973); *Diaz v. State*, 516 S.W.2d 154 (Tex.Cr.App.1974); *Davila v. State*, 547 S.W.2d 606, 609 (Tex.Cr.App. 1977).

This proposition of law was cited by the majority as supporting the holding that there was no fatal variance between the allegations of the revocation motion and the proof offered under the circumstances. This proposition cannot be stretched that far. It does not mean that the State may allege one offense in the revocation motion as a violation of probationary conditions and prove a different offense or prove the same offense but by different means than alleged.

In *Pickett v. State*, 542 S.W.2d 868, 870 (Tex.Cr.App.1976), this court stated:

"Probation may not be revoked upon a finding of any violation of the law other than that alleged or necessarily included within the allegations of that alleged in the motion to revoke. *Franks v. State*, Tex.Cr.App., 516 S.W.2d 185; *Ford v. State*, Tex.Cr.App., 488 S.W.2d 793."[5]

Thus, the holding of the majority in this regard is clearly erroneous. The difficulties

with the majority's opinion, however, do not here cease.

On original submission the appellant contended that there was no showing that he was represented by the same counsel at the prior trial and the revocation hearing and urged the *Barrientez* rule would not thus apply. Subsequent to abatement the trial judge took judicial notice that the attorney for the appellant was the same and the majority notes that a docket sheet was introduced into evidence. The questionable statement of facts now considered by the majority both reflect that an attorney by the same name represented the appellant at both proceedings. The majority finds the record reflects the appellant was represented by the same counsel at both proceedings, but declares it is unnecessary as a matter of law to decide whether the counsel must be the same at both proceedings under the *Barrientez* rule. Despite such disclaimer, the majority proceeds to discuss and in effect decide such question, therefore influencing and prejudicing future decisions by suggesting that such a requirement would impose an inflexible requirement upon the *Barrientez* rule. The Barrientez rule is a house built on shifting sands and is already loose as a goose. Nevertheless, the majority states:

"If, as we hold it does, the *Barrientez* rule remains a viable rubric of procedure in these matters, no denial of due process occurs where the new attorney in the revocation proceedings has before him the record of the trial in the noticed proceedings."[6]

It is thus interesting to note that at the time of the revocation hearing the testimony of which the trial judge took "judicial notice" was untranscribed and thus not available to the appellant's counsel. How in Texas' green earth is it possible that due process and the effective assistance of counsel are produced where a different counsel

---

5. It is observed that in *Cleland v. State*, 572 S.W.2d 673, 675 (Tex.Cr.App.1978), Judge Roberts, speaking for the panel quoted the above portion of *Pickett* with approval.

6. Of course, it is not the proceedings that are judicially noticed but the testimony introduced therein.

for the defense at the revocation hearing is confronted with the court taking "judicial notice" of an untranscribed record as evidence supporting the revocation?[7]

The majority states that even though both parties agreed that the *Barrientez* rule required the same attorney in both proceedings it could not agree. Certainly as noted by the majority the *Barrientez* opinion did not mention such requirement despite the dissent on this very point. In *Stephenson v. State*, 500 S.W.2d 855, 856 (Tex.Cr.App. 1973), shortly after *Barrientez*, it was stated in applying the *Barrientez* rule that ". . . the same attorney who had by appointment represented [Stephenson] represented him at the revocation of probation hearing." The majority in the instant case then states that this writer in a concurring opinion in *O'Hern v. State*, 527 S.W.2d 567, 570 (Tex. Cr.App.1975), incorrectly stated that such a requirement was a part of the *Barrientez* rule. If this writer was incorrect, it is observed that within a month thereafter Judge Roberts, the author of the *Barrientez* opinion and of the instant case, wrote in a concurring opinion in *Green v. State*, 528 S.W.2d 617, 619 (Tex.Cr.App.1975):

> "I concur in the result reached in this case. Although it does not appear from the record that counsel at the revocation hearing was the same as counsel at the trial of the aggravated robbery charge, such fact was admitted by the parties at oral argument. *The requirements of Barrientez v. State, 500 S.W.2d 474 (Tex. Cr.App.1973), for the introduction of this testimony are thus satisfied.*" (Emphasis supplied.)[8] See also dissenting opinion in *Green.*

In *Bailey v. State*, 543 S.W.2d 653 (Tex. Cr.App.1976), Judge Odom in applying the *Barrientez* rule stated for the court:

> "In the case at bar, the revocation hearing and the trial for the offense of felony theft occurred before the same

judge on the same day. *Appellant was also represented by the same counsel during the entire course of the proceedings. Green v. State, Tex.Cr.App., 528 S.W.2d 617; Barrientez v. State, Tex.Cr.App., 500 S.W.2d 474.* It was not improper for the trial court to revoke the appellant's probation on the basis of his guilty plea to the offense of felony theft . . . ." (Emphasis supplied.)

In a panel opinion, Judge Roberts speaking for the panel, stated in *Haile v. State*, 556 S.W.2d 818, 820 (Tex.Cr.App.1977):

> "We are confronted with a situation where the motion to revoke was heard one day after a jury convicted the appellant of the offense upon which the motion to revoke was based. The trial judge in both cases was the same. *The same attorney represented the appellant in both cases.*
>
> "*These facts bring us within the scope of our holdings in Barrientez v. State, 500 S.W.2d 474 (Tex.Cr.App.1973); O'Hern v. State, 527 S.W.2d 568 (Tex.Cr.App.1975), and Green v. State, 528 S.W.2d 617 (Tex. Cr.App.1975) . . . .*"

In every case where the *Barrientez* rule has been applied by this court the attorney was the same at both the prior trial and the revocation hearing whether the opinions mentioned that fact or not.

In view of the above, is it any wonder both parties in the instant case agreed the attorney had to be the same at both proceedings? The majority concludes that the record, as they review it, shows that the same attorney represented the appellant at both proceedings, but reaches out to indicate that such a requirement is not necessary for the *Barrientez* rule to be applied. Can we really say that appointed counsel for a defendant in a revocation proceeding whom the majority has even said is not entitled to a ten days' preparation period,

---

7. The record in the instant case before us shows that the statement of facts considered by the majority was certified and approved long after the revocation hearing. The record does not otherwise show it was available to counsel at the time of the revocation.

8. This concurrence was necessary because the majority opinion in *Green* failed to mention that the attorney representing Green was the same at both proceedings.

*Hill v. State*, 480 S.w.2d 200 (Tex.Cr.App. 1971), need not be the same attorney at the prior hearing or trial before the *Barrientez* rule can be applied? Despite this court's lip service to due process in revocation proceedings, may an attorney be appointed to represent a defendant at a revocation of probation proceeding and without ten days to prepare be forced to a hearing where he is confronted with "judicial notice" of testimony of a prior trial or hearing by the trial judge over which the trial judge states he presided and of which the attorney has no personal knowledge and which at the time is untranscribed and not available to the appointed counsel and perhaps not available even on an appeal on original submission? Horsefeathers. Hogwash.

Judge Dally suggested in *Bradley* I that the revocation hearing be held at the same time as the trial on the merits of the penal offense alleged as a violation of probationary conditions in order to avoid the *Barrientez* rule. The feasibility of such suggestion may present some problems. There may well be alleged violations of probationary conditions which are not related to the charge on the said trial on the merits. Evidence as to such probationary conditions, as well as defensive matters, would have to be presented out of the presence of the jury if a jury is the trier of the facts at the trial on the merits, and objections and other remarks to the court would have to be closely guarded not to reveal to the jury that another hearing was being conducted along with the trial on the merits including extraneous offenses and matters.

What this court has done is to create or imagine a difficulty where there was no difficulty and then offer an unorthodox solution to the dreamed of difficulty—the unreasonable burden on the State to reproduce witnesses from a prior trial. The common witnesses in a probation revocation proceeding are the clerk of the court and probation officers who are usually readily available to the court, and this is particularly true where the violations alleged are the failure to pay court costs, supervisory fees, etc., and the failure to report to the probation officer as required. Where a violation

of a penal offense has been alleged as a probationary violation, and there has been a prior trial on merits, where is the unreasonable burden on the State to reproduce the witnesses from the prior trial? Is there any greater burden on the State than if this court reversed a conviction and a second trial ensued? Is there any greater burden if the trial judge has a common cold and cannot preside at the trial on the merits and the witnesses must be re–produced because of a continuance or postponement? Of course not, and an individual's liberty is involved in both proceedings. The only difference is the attitude of a majority of this court to probation revocation proceedings. The truth of the matter, as most members of the bench and the bar know, is that where there has been a prior trial and conviction for the offense alleged as the basis of the revocation the defense is not going to insist upon the State reproducing their witnesses from the prior trial at the revocation proceedings. Prior to *Barrientez* the State recalled only such witnesses as were necessary to sustain their lesser burden of proof in revocation proceedings or frequently entered into stipulations of facts or entered an agreed statement of facts to be considered by the court where there had been a prior trial on the very offense the defendant was alleged to have committed. The use of a Frankenstein–type of "judicial notice" which is not judicial notice at all is not necessary for the effective prosecution of revocation of probation proceedings. The trial courts and prosecutors are better advised to spend a few more minutes with revocation proceedings and foreclose all matters of possible error. Why spend years in litigation where minutes will do the job?

I dissent.

CLINTON, Judge, dissenting.

Though the *Barrientez* concept of "judicial notice" is not barred by statute, neither is it authorized by one. It is purely a judicially conceived notion transformed into fiat by written opinion. Without explica-

tion of rationale,[1] the Court justified the concept of a trial court taking "judicial notice" of evidence introduced in a prior proceeding to support revocation of probation on a policy of convenience, *viz*:

"*Certainly*,[2] Judge Walker could take judicial notice of the evidence introduced in that prior proceeding. Are we to pretend that this judge was not present at the murder trial, and force the State to reproduce the same witnesses? We think not. Such a requirement would place an unreasonable burden on the State."

In the several cases that have followed *Barrientez*,[3] only *O'Hern v. State*, supra in note 3, attempts a restatement of a policy consideration underlying its rule:

"It would be useless to have witnesses to appear before the same judge during the revocation proceeding when he had already heard their testimony when they were subjected to cross-examination on the same fact issue."

*Bradley I*, supra in note 3, without pretension of rationale more candidly justifies the rule "in light of special considerations surrounding the revocation proceedings," *id.*, at 729.[4]

Still, one working with the theory is left disturbed and unsettled by calling what *Barrientez* permits, a form of "judicial notice." In the first place, "it is well settled that the scope of the exercise of the function of judicial notice is not coextensive with the personal knowledge of the individual judge. Personal knowledge is not judicial knowledge," 1 Texas Practice 195–196,

Ray, Law of Evidence (Third Edition) § 162. Secondly, where the fact qualifies for notice "the judge is justified in declaring the truth of the fact without evidence from the party" requesting him to do so, *id.* at 193. Only a casual hearing of variations on the same theme played by *Barrientez* and its progeny brings the realization that the tune is not "judicial notice."

*Bradley I* pinpoints what the others imply. The trial judge stated for the record that he was relying on his personal knowledge.[5] As Mr. Ray makes clear, that is not judicial knowledge. Yet, even that knowledge was not spread upon the record of the revocation hearing. Thus, the *Bradley I* Court found itself compelled to require "for purposes of review, that the facts so noticed be apparent from the record," *id.* at 731, and suggested alternative methods "to cure, for review process purposes, the failure of the record of the probation revocation hearing to reflect the testimony noticed therein," *id.* at 732. None of this sounds like "judicial notice" to one who has listened all his professional life to stalwarts such as McCormick and Ray orchestrate it. Whatever personal knowledge of a trial judge evidenced by a record of testimony may be, judicial notice it is not.

Moreover, pretending that it is, raises a warning signal that cannot be ignored and must be stilled. As Mr. Ray points out, 1 Texas Practice at 199:

"... While there appears to be no Texas cases directly in point, the weight of authority elsewhere clearly supports the

---

1. *Barrientez* finds *Hilton v. State*, 443 S.W.2d 844, n.1 (Tex.Cr.App.1969), "in point." Despite a dissenting caution for hesitation by the Court "before placing its stamp of approval on such procedure as here utilized," *id.*, at 847, the Court merely applied the abuse of discretion standard and, utterly without explanation, found none.

2. It is sometimes said that a declaration beginning "certainly," "surely," or "plainly" is not all that much so, for if it were the basis for the declaration could be just as easily stated. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

3. E. g., *Stephenson v. State*, 500 S.W.2d 855 (Tex.Cr.App.1973); *O'Hern v. State*, 527 S.W.2d 568 (Tex.Cr.App.1975); *Green v. State*, 528 S.W.2d 617 (Tex.Cr.App.1975) and *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978) – "*Bradley I*."

4. In note 1 of its opinion the Court rejects criticism that the rule goes beyond proper limits of judicial notice and concludes, "The rule of *Barrientez* ... now has an established place within the doctrine of judicial notice."

5. "I recall the trial and I recall the testimony. I want the record to show this is testimony that was heard in this court by this Judge ...," *Bradley I*, supra at 729.

view that when judicial notice of a fact has been taken, *evidence to the contrary is not admissible . . . .*"

Unfairness could be no more fundamental than denying to a probationer the right to challenge, to demolish, to rebut judicially noticed testimony against him. Of course, we do not reach that question here for appellant, though objecting to the trial court's taking notice, did not proffer competing testimony in his own behalf. But that the problem lurks about for accosting in the future is enough to suggest caution in providing a certain opportunity for the confrontation.

Rather than a forced drill to the beat of "judicial notice" the Court should find a different drummer. The procedure of holding simultaneously the trial on indictment and hearing on motion to revoke, suggested by Judge Dally in *Bradley I*, at 733, may not be feasible in a particular case. If not, then provisions of Articles 3720,[6] and 3731a,[7] V.A.C.S. authorize the State to tender as evidence of its "occurrence and existence," Article 40.09, § 4,[8] V.A.C.C.P., portions of the transcription of notes taken by the official court reporter[9] of testimony

---

**6.** Article 3720 permits certified copies of records of courts of this State to be admitted as evidence where the original records would be admissible.

**7.** Article 3731a makes admissible any official written record, or part of record, made by an officer of this State or of any governmental subdivision thereof upon proper notice and when attested, certified and authenticated as provided therein.

**8.** "... A transcription of the reporter's notes when certified to by him and included in the record shall establish the occurrence and existence of all testimony. . . ."

**9.** An official court reporter has been legislatively designated "a sworn officer of the court" by Article 2321, V.A.C.S., and as a notary public holds an office authorized by the Constitution of Texas, Article 4, § 23 and, is a "public officer," *Lawyers Surety Corp. v. Gulf Coast Investment Corp.*, 410 S.W.2d 654, 657 (Tex. Civ.App.-Tyler 1967, writ ref'd n. r. e., 416 S.W.2d 779, 1969), whose appointment, duties and responsibility are extensively regulated by law, e. g., Article 5949, V.A.C.S., and whose removal from office is legislatively provided by Article 5988, V.A.C.S.

deemed relevant to the motion to revoke.[10] Such reproduced testimony has been held admissible. *Oklahoma R. Co. v. Boles*, 30 Okl. 764, 120 P. 1104 (1912); see also 1A Texas Practice 470, Ray, Law of Evidence (Third Edition) § 1278.[11] In this way problems from the unorthodox resort to "judicial notice" will be avoided.[12]

I respectfully dissent to continuation of what is manifestly an awkward procedure fraught with existing and potential difficulties.

PHILLIPS, J., joins.

---

**10.** Article 2324, V.A.C.S. mandates that each official court reporter shall upon request:

"Preserve all shorthand notes taken in said court for further use . . . and furnish to any person a transcript of all such evidence . . . or any portion thereof as such person may order. . . ."

**11.** The rationale of ancient opinions holding that a transcript of stenographic notes is not admissible as documentary evidence, see 32 C.J.S. 853–854, *Evidence* § 652, is no longer valid, and the more modern view is that the transcription may be made admissible by statute when certified and verified as required, *ibid.*

**12.** The proposal to utilize the official written record procedure is based, of course, on the premise that any confrontation problem does not exist or has been resolved and also with the understanding that provisions of Article 39.01, V.A.C.C.P. are not implicated since the record is being used in a probation revocation hearing rather than "the trial of such defendant's criminal case." Moreover, the probationer remains free to offer other portions of recorded testimony and, indeed, to call the trial witnesses for such further examination deemed advisable.