# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00175-CR

**Esteban Alfonso Jimenez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT NO. 12421, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Esteban Alfonso Jimenez of the offense of indecency with a child by contact and assessed punishment at ten years' imprisonment. The district court suspended imposition of the sentence and placed Jimenez on community supervision for ten years. Subsequently, the State filed a motion to revoke community supervision. The State alleged that Jimenez violated the terms of his community supervision by (1) committing the criminal offenses of aggravated assault with a deadly weapon and interference with an emergency call, (2) failing to pay supervision fees, and (3) failing to complete his court-ordered community service restitution hours.

At the revocation hearing, Jimenez pleaded not true to each of the alleged violations. The district court then proceeded to hear evidence. After both sides closed, the district court found the allegation regarding the supervision fee to be not true but found the other allegations to be true.

The district court then revoked Jimenez's community supervision and sentenced him to nine years' imprisonment. This appeal followed. In a single issue on appeal, Jimenez asserts that the district court abused its discretion in revoking his community supervision. Specifically, he claims that the State's allegations "were not supported by the evidence."

We review a trial court's decision to revoke community supervision for abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion in revoking community supervision when the State fails to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The State's burden of proof in community supervision revocation cases is by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763-64. Thus, the trial court does not abuse its discretion in revoking community supervision if the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision. *See id*. at 764. Additionally, proof of any one of the alleged violations is sufficient to support the revocation order. *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979); *Atchison v. State*, 124 S.W.3d 755, 758 (Tex. App.—Austin 2003, pet. ref'd).

The district court heard evidence that on the night of August 18, 2009, Deputies Jeff Ford and Ben Medrano of the Travis County Sheriff's Office responded to a report of a domestic disturbance in Del Valle at the residence of Jimenez and his wife, Shannon. Ford testified that when he arrived at the residence, he noticed Shannon sitting on the floor of the living room "holding her left hand in her lap and the left hand was bloody. . . . She was tearful and appeared to be in pain." Ford also recalled that, "maybe four feet . . . from where [Shannon] was sitting," he

observed a broom with a yellow handle that, according to Ford, "the victim advised was used in the assault." Ford explained that the broom was made of "a hard material, possibly metal underneath plastic coating." When asked if he had formed an opinion about the ability of this particular broom to cause serious bodily injury, Ford testified, "Given what the broom is made of and the manner it was reported to have been used, it could have caused serious bodily injury up to and including death if a person was maybe struck in the head. It could be viewed as a deadly weapon." Ford took pictures of Shannon, her hand, and the broom, and the pictures were admitted into evidence. Ford then made arrangements for EMS to transport Shannon to the hospital, where she was treated for her injuries.

Also present at the residence that night was Deanna Ruiz, Shannon's daughter-in-law. Ford testified that Ruiz appeared "very upset about what had happened." Ford asked Ruiz what had happened. According to Ford, Ruiz told him that she was outside the residence when "she heard the victim yell out and she went back in and the incident had already happened." However, on redirect, after having reviewed a copy of his probable-cause affidavit, Ford elaborated, "When she heard the scream she ran back inside the residence and she actually saw him handling the broom." Reading directly from his affidavit, Ford added, "Ruiz advised she ran back inside the residence to see Mr. Jimenez intentionally swing the broom handle and strike Mrs. Jimenez on the hand. Ruiz advised if it had not been for Mrs. Jimenez's defensive action of holding arms and hands up Mr. Jimenez would have struck her in the head."

When Deputy Medrano arrived at the residence, he spoke with Jimenez. According to Medrano, Jimenez "started making statements that he had thrown a broom which struck a

3

chair and hit his wife . . . . And he had mentioned several times that it was an accident what had happened." Medrano took Jimenez into custody and placed him in his patrol car. Medrano then went back inside the residence and observed EMS personnel treating Shannon. He recalled, "But when they were treating her hand, it was busted up really, really [bad], and I remember they were trying to get a ring off because of the swelling in the hand and the skin was split. . . ." Medrano also opined that, based on the damage he had observed to Shannon's hand, he did not believe what had happened was an accident as Jimenez had claimed. Medrano explained, "I don't care how many times a broom hits a chair and it bounces off, it's not going to cause that kind of damage. This was a direct blunt force trauma."

Ruiz and Shannon both testified at the revocation hearing. Their testimony at the hearing differed from what the officers had reported. Ruiz claimed that she had not witnessed the incident, and she denied ever seeing the broom in Jimenez's hands. Ruiz acknowledged, however, that Shannon "was hurt" and "bleeding" when she found her and that Shannon had needed to receive stitches at the hospital for her injured hand. She also acknowledged that Jimenez was upset the night of the incident.

Shannon denied that her husband had hit her with the broom. She claimed instead that he had hit the broom on the couch and that the dustpan attached to the broom flew off the broom and hit her hand. She also denied telling Deputy Ford that Jimenez had struck her with the broom. Shannon acknowledged that Jimenez was "upset" that night but refused to say that he was "angry."

Jimenez testified in his defense and denied assaulting his wife. He claimed that he was upset that night because of the circumstances surrounding his probation and had asked Shannon

4

and Ruiz to leave the premises. At some point after that, Jimenez recalled, he "got the broom" and "just slammed it against the couch." He added, "I don't know what happened, you know, but suddenly I saw the plastic dustpan hit my wife." Jimenez denied hitting his wife with the broom.

We cannot conclude on this record that the district court abused its discretion in finding that Jimenez violated the terms of his community supervision by committing a criminal offense. A person commits the offense of aggravated assault with a deadly weapon if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse, and the person uses or exhibits a deadly weapon during the commission of the assault. Tex. Penal Code Ann. §§ 22.01(a)(1), .02(a)(2) (West Supp. 2009). A deadly weapon includes anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id*. § 1.07(a)(17) (West Supp. 2009).

Here, the district court could have reasonably inferred from the testimony of Deputies Ford and Medrano that Jimenez intentionally, knowingly or recklessly caused bodily injury to his wife by hitting her on the hand with the broom. Both officers testified to the severity of Shannon's injury, and it was undisputed that Shannon needed medical attention at the hospital to treat her hand. Ford testified that Shannon's left hand was "bloody" and Medrano characterized the injury as "blunt force trauma." The district court also could have reasonably inferred that the broom was a deadly weapon in the manner of its use or intended use. Ford testified that the broom was made of "a hard material, possibly metal underneath plastic coating" and that it was capable of causing death or serious bodily injury if it struck a person in the head. Ford further testified that

5

Ruiz had told him that "if it had not been for Mrs. Jimenez's defensive action of holding arms and hands up Mr. Jimenez would have struck her in the head."

Jimenez and his wife both denied that he had used the broom in the manner the officers had indicated, and Ruiz denied witnessing the incident. However, in a proceeding to revoke probation, the trial judge is the sole trier of the facts, the credibility of the witnesses, and the weight to be given to particular testimony. *Naquin v. State*, 607 S.W.2d 583, 586 (Tex. Crim. App. 1980); *Jones v. State*, 176 S.W.3d 47, 51 (Tex. App.—Houston [1st Dist.] 2001, no pet.). The district court would not have abused its discretion in finding the testimony of Jimenez, his wife, and Ruiz to be not credible.

We also disagree with Jimenez's claim that there was a fatal variance between the pleading and the proof in this case. Jimenez places significance on the defense's evidence tending to show that Shannon was hit with a "dustpan" rather than a "broom handle" as alleged in the motion to revoke. Again, the district court could have simply disbelieved the defense's evidence and found that Shannon was in fact hit by the broom handle as alleged. However, even assuming that it was actually the dustpan that hit Shannon, it is well settled that allegations in a revocation motion need not be made with the same particularity as an indictment or information. *See Frazier v. State*, 600 S.W.2d 271, 276 (Tex. Crim. App. 1980). It is sufficient that a violation of law be alleged and that fair notice be given to the probationer. *Bradley v. State*, 608 S.W.2d 652, 655 (Tex. Crim. App. 1980); *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd). That is what occurred here.

Having found that the State satisfied its burden of proving by a preponderance of the evidence that Jimenez violated the terms of his community supervision by committing a criminal offense, we need not address the State's other allegations. *See Moses*, 590 S.W.2d at 470; *Atchison*, 124 S.W.3d at 758. We overrule Jimenez's sole issue on appeal.

We affirm the order revoking Jimenez's community supervision.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: August 25, 2010

Do Not Publish