

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

———————————————

No. 06-10-00066-CR

———————————————

MARVIN YASTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 3rd Judicial District Court
Anderson County, Texas
Trial Court No. 29591

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Marvin Yaster pled guilty to aggravated assault of Carol Beningo with a deadly weapon and received deferred adjudication community supervision for a period of five years.[1]   Under the first condition of community supervision, Yaster was instructed not to commit an offense "against the laws of this State."   The State moved to revoke community supervision and proceed with adjudication of guilt alleging, among other violations, that Yaster failed to comply with the first ground of community supervision by committing family violence assault causing bodily injury to Beningo and interfering with her ability to place an emergency 9-1-1 telephone call.   After a hearing, the trial court adjudicated Yaster's guilt for aggravated assault with a deadly weapon, sentenced him to ten years' imprisonment, and ordered him to pay a $1,000.00 fine.[2]

Yaster complains that:   (1) the trial court's judgment incorrectly reflects his plea of "not true" to allegations contained within the motion to adjudicate; (2) the trial court's judgment fails to list the ground upon which community supervision was revoked; (3) the evidence was insufficient to revoke community supervision; and (4) the trial court erred in failing to conduct a punishment hearing after adjudication of guilt.   We affirm the trial court's judgment, as modified.

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.   See TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).   We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue.   See TEX. R. APP. P. 41.3.

[2]Judgments nunc pro tunc were entered reducing Yaster's sentence from fifteen years' imprisonment to ten years' imprisonment.

**I.** **Trial Court's Written Order Referenced a Ground for Revocation of Community Supervision**

We first address Yaster's complaint that the trial court erred in failing to specify the ground upon which it revoked community supervision and proceeded to adjudication. The transcript of the hearing reveals that the trial judge did not orally pronounce the condition of community supervision violated. The trial judge made only the following statement: "I'm going to grant the State's Motion to Adjudicate. The prior order of this Court granting him probation is hereby revoked. I hereby find and adjudge him guilty as charged of the offense of aggravated assault with a deadly weapon."

Because this type of hearing is administrative in nature, procedural and evidentiary requirements are not enforced as strictly as they would be in a criminal trial. *Montoya v. State*, 832 S.W.2d 138, 142 (Tex. App.—Fort Worth 1992, no pet.) (citing *Bradley v. State*, 564 S.W.2d 727, 729 (Tex. Crim. App. 1978), *aff'd after abatement*, 608 S.W.2d 652 (Tex. Crim. App. 1980)). Statutes governing proceedings upon a motion to revoke community supervision and proceed to adjudication do not require a trial court to orally pronounce its findings in support thereof, and Yaster does not argue that an oral pronouncement was required. TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 5(b), 21, 23 (Vernon Supp. 2010).

Instead, Yaster points to the transcript in support of his contention that "none of the four judgments signed by the trial court judge state any ground or grounds upon which the Appellant's

community supervision was revoked." However, the written judgment contains the following: "Defendant violated the terms and conditions of community supervision as set out in the State's ORIGINAL Motion to Adjudicate Guilt as follows: 1." The number 1 corresponds with paragraph 1 of the "Motion to Proceed With Adjudication of Guilt and Sentence." Thus, the trial court found Yaster violated the first condition that he refrain from violating any law as alleged in the motion to adjudicate. We find Yaster's first point of error without merit.

## II. Trial Court's Revocation Was Based on Sufficient Evidence

Next, Yaster complains that the evidence was insufficient for the trial judge to find that he violated a condition of community supervision. The determination of an adjudication of guilt is reviewable in the same manner as that used to determine whether sufficient evidence supported the trial court's decision to revoke community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b). While the decision to revoke community supervision rests within the discretion of the trial court, it is not absolute. *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). To revoke community supervision, the State must prove every element of at least one ground for revocation by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 10 (Vernon Supp. 2010); *T.R.S.*, 115 S.W.3d at 320; *Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.). "'Preponderance of the evidence' has been defined as the greater weight and degree of credible testimony." *T.R.S.*, 115 S.W.3d at 320.

In a revocation hearing, the trial judge is the sole trier of the facts and determines the

4

credibility of the witnesses and the weight to be given to the testimony. *T.R.S.*, 115 S.W.3d at 321; *Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.); *Johnson*, 943 S.W.2d at 85. Considering the unique nature of a revocation hearing and the trial court's broad discretion in the proceedings, the general standards for reviewing sufficiency do not apply. *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. denied). Instead, we review the trial court's decision regarding community supervision revocation for an abuse of discretion and examine the evidence in a light most favorable to the trial court's order. *T.R.S.*, 115 S.W.3d at 321 (citing *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)); *Pierce*, 113 S.W.3d at 436. If the greater weight of credible evidence creates a reasonable belief Yaster has violated a condition of his community supervision, the trial court did not abuse its discretion and its order must be upheld. *Pierce*, 113 S.W.3d at 436 (citing *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). If the State's proof is sufficient to prove any one of the alleged community supervision violations, the revocation should be affirmed. *T.R.S.*, 115 S.W.3d at 321 (citing *Stevens v. State*, 900 S.W.2d 348, 351 (Tex. App.—Texarkana 1995, pet. ref'd)).

Yaster committed the offense of assault if he intentionally, knowingly, or recklessly caused Beningo, a member of the same household, bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2010); TEX. FAM. CODE ANN. § 71.004 (Vernon 2008). He committed the offense of interference with an emergency telephone call if he knowingly prevented or interfered with Beningo's ability to place a 9-1-1 emergency call. TEX. PENAL CODE ANN. § 42.062(a) (Vernon

Supp. 2010). An emergency under this section "means a condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault or in which property is or is reasonably believed by the individual making the telephone call to be in imminent danger of damage or destruction." TEX. PENAL CODE ANN. § 42.062(d) (Vernon Supp. 2010).

The trial court heard the following evidence: Officer Michael Mitchell was called to a residence where Yaster and Beningo cohabitated. He testified that upon his arrival, a nervous, upset, and frightened "Beningo was standing on her front porch . . . She advised me that her and Marvin had been in a verbal altercation. When she advised him she was going to call 9-1-1, he tackled her and caused her to strike her head on the floor," knocking the telephone from her hand.

Beningo testified, "[W]e got in an argument. And I went to call 9-1-1, and when I did, he pushed me. And when he pushed me, I fell down, and the phone went flying." Beningo claimed that they both had been drinking and that even though she hit her head on the floor after being pushed, it only "hurt for a minute or two." She clarified that the argument was verbal and that Yaster "didn't hit me or anything," statements confirmed by the dispatch audio recording.

The recording transcript demonstrated a struggle, Yaster's threats to throw Beningo "across the room," Beningo's realization that the 9-1-1 dispatcher was on the telephone, her pronouncement to Yaster that "[y]ou're going to jail tonight for assault," and her statement to the dispatcher that "Marvin hit me." She told the dispatcher, "He pushed me down on the floor

6

because I told him to get me—my stuff out of the computer. He put something in there today that's suppose [sic] to give my computer a virus."[3] "[H]e says it's going to mess my computer up." Beningo explained, "I didn't even know that call went through, . . . .because he yanked the phone . . . .[and] [i]t broke."

The trial court, acting as fact-finder, could have determined the evidence demonstrated that Yaster pushed Beningo and caused her to hit her head, and/or that Yaster interfered with Beningo's ability to place an emergency 9-1-1 telephone call, based upon the belief that her computer was being destroyed, and her fear of imminent assault by pushing her and breaking the telephone. Viewing the evidence in a light most favorable to the trial court's order, we conclude the trial court did not abuse its discretion in finding either assault causing bodily injury to Beningo, and/or interference with an emergency telephone call by a preponderance of the evidence.

## III. Trial Court Afforded Opportunity to Present Mitigating Evidence on Punishment

Next, Yaster complains that the trial court failed to conduct a punishment hearing after adjudicating guilt. Section 23(a) of Article 42.12 of the Texas Code of Criminal Procedure states that "[i]f community supervision is revoked after a hearing under Section 21 of this article, the judge may proceed to dispose of the case as if there had been no community supervision." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23. Thus, "when a trial court finds that an accused has committed a violation as alleged by the State and adjudicates a previously deferred finding of guilt,

---

[3]Yaster testified that he was attempting to repair the computer by ridding it of a virus and that he did not tackle or otherwise hit Beningo.

the court must then conduct a second phase to determine punishment." *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992). "The defendant is entitled to a punishment hearing . . . and the trial judge must allow the accused the opportunity to present evidence." *Id.*

After adjudication, the trial court asked if there was "[a]ny objection to sentencing" from either party, to which Yaster's attorney replied, "No objection." He also stated there was no reason the court should not sentence Yaster "other than . . . we don't think he's guilty." The court next asked Yaster if he had "anything [he] wish[ed] to say," to which he replied, "I'm not guilty." It appears that Yaster was presented with an opportunity to object or to provide evidence in mitigation of punishment. At this stage, if Yaster "wanted an opportunity to present evidence and argument on the question of punishment, it was incumbent upon him to ask for that opportunity and to be ready to present such evidence and argument as soon as the trial court announced its finding that he had violated the conditions of his probation." *Euler v. State*, 218 S.W.3d 88, 91 (Tex. Crim. App. 2007) (reasoning that "[p]art of being prepared for a revocation hearing is being prepared to present evidence and argument on the question of the proper disposition in the event that the trial court finds that the conditions of probation have been violated"). Because Yaster did not present such evidence when given the opportunity, error was not preserved and he may not complain of the lack of a punishment hearing for the first time on appeal. TEX. R. APP. P. 33.1; *Hardeman v. State*, 1 S.W.3d 689, 690–91 (Tex. Crim. App. 1999) (when defendant fails, after

8

being given chance to object that no punishment hearing was held after adjudicating guilt, error is not preserved). We overrule this unpreserved point of error.

## IV. We Modify Judgment to Reflect Correct Plea to State's Allegations

Last, the court's original judgment and three following judgments nunc pro tunc listed Yaster's plea to the "motion to adjudicate" as "true." This was incorrect, as Yaster pled "not true" to the allegations. The Texas Rules of Appellate Procedure give this Court authority to reform judgments and correct typographical errors to make the record speak the truth. TEX. R. APP. P. 43.2; *French v. State,* 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, pet. ref'd). The State agrees that the judgment should be modified to reflect Yaster's plea in accordance with the record. We hereby modify the trial court's judgment to reflect a plea of "not true" to the allegations in the State's motion to revoke community supervision and proceed with adjudication of guilt.

## V. Conclusion

We affirm the trial court's judgment, as modified.

Jack Carter
Justice

9

Date Submitted:    November 3, 2010
Date Decided:      November 4, 2010

Do Not Publish