John Galen DITTOE, Appellant,

v.

STATE of Texas, Appellee.

No. 11–95–358–CR.

Court of Appeals of Texas,
Eastland.

Aug. 22, 1996.

Rehearing Overruled Nov. 14, 1996.

John G. Dittoe, Jacksboro, for appellant.

John Terrill, District Attorney, Stephenville, for appellee.

Before ARNOT, C.J., DICKENSON, J., and McCLOUD,* Senior Justice.

## OPINION

AUSTIN McCLOUD, Senior Justice.

Appellant appeals the revocation of his community supervision. Appellant was orig-

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

inally convicted on his guilty plea of theft from the person of another. The court assessed his punishment at confinement for two years in a state jail facility and a fine of $1,000.00. However, imposition of the confinement portion of the sentence was suspended; and appellant was placed on community supervision for four years. Thereafter, the trial court granted the State's motion to revoke appellant's community supervision and imposed the original sentence of confinement for two years in a state jail facility. Appellant appeals. We affirm.

■ Appellant contends in his first point of error that the revocation order should be reversed because of the variance between the allegations in the motion to revoke and the proof at trial. The State alleged in its motion that appellant had committed forgery by making a writing, a check, that purported to be the act of Loretta Pearl Allison. A copy of the check was incorporated into and made a part of the motion. The check showed on its face that it was purportedly signed by "D. E. Allison." Appellant argues that the evidence did not show that the check purported to be the act of Loretta Pearl Allison because the name appearing as the maker of the check was D.E. Allison as opposed to Loretta Pearl Allison.

Loretta Pearl Allison, who is also Mrs. D.E. Allison, testified that the check, No. 813, was taken from her checkbook at home and was written on her account and that D.E. Allison was her deceased husband. The name "Mrs. D.E. Allison" along with her address and telephone number were printed at the left-hand corner of the check.

■ It is not necessary that an allegation in a motion to revoke be in the same precise terms as would be necessary in an indictment allegation. It is sufficient that a violation of law be alleged and that fair notice be given to the probationer. *Chacon v. State*, 558 S.W.2d 874, 876 (Tex.Cr.App.1977). Appellant was put on notice that he was charged with writing a check on the account of "Mrs. D.E. Allison." Appellant was put on notice that the check on its face showed to be signed by "D. E. Allison." The copy of the check, which was incorporated into the mo-

tion, gave appellant fair notice of the charge that he would be called upon to defend. See *Bradley v. State*, 608 S.W.2d 652 (Tex.Cr. App.1980); *Nickerson v. State*, 686 S.W.2d 294 (Tex.App.—Houston [14th Dist.] 1985, pet'n ref'd). Appellant's first point is overruled.

■ Appellant signed a written confession wherein he explained how he got the check in question from Mrs. Allison's checkbook in her house. He made the check out for $689.52. He left the payee blank, and he signed "Mrs. Allison's" name to the check. Appellant told Walter Moran, who was with appellant, to put his name as payee because appellant had no identification.

Appellant argues in his second point of error that the confession followed an illegal detention and that the State failed to prove that intervening circumstances purged the taint of the illegal detention. Police Officer Stephen Davis testified that he was directed to the house of Mrs. D.E. Allison to investigate "solicitors without a permit." A city ordinance prohibited persons from soliciting business door-to-door without a permit. When the officer arrived, Officer Davis saw appellant, Charles Odom, and Walter Moran at the Allison residence. Officer Davis asked appellant if he had a permit. When appellant answered that he did not, Officer Davis told appellant about the city ordinance and that appellant would be required to get a permit before he could continue his business. Officer Davis testified, "I just let it go with a warning this time and that concluded that part and then I—I decided to go ahead and send him about his way."

As appellant was leaving in his car, Mrs. Allison told the officer, "[W]ait, there's still the matter of the money I gave him for spraying my yard." Officer Davis had not understood that Mrs. Allison had given appellant a check for spraying. Officer Davis thought that appellant had simply approached Mrs. Allison and asked if he could do work and that she had sent him on his way and called the police. Upon learning about the check, Officer Davis told his partner, Officer Gilbert, "to go ahead and stop him and bring him back ... so we could

discuss this matter about the money." Appellant had driven only a few blocks when he was stopped by Officer Gilbert and told to return to Mrs. Allison's residence. When appellant and his two companions returned to the house, Officer Davis gave appellant his "*Miranda* warning"[1] because the officer decided that appellant "may have been involved in something that could be considered a deceptive business practice."

During the questioning of appellant and his companions, the officers learned that appellant had charged Mrs. Allison $30.00 for spraying her yard but that the yard had not been sprayed. Upon further questioning, Officer Davis learned that appellant had taken the blank check in question from Mrs. Allison's house and had filled it out for $689.52. The check was in Moran's shoe. Officer Davis testified that at that time he arrested appellant.

Appellant specifically argues that he was illegally detained or seized when he was ordered to return to Mrs. Allison's house. We disagree. The court in *Johnson v. State*, 912 S.W.2d 227 (Tex.Cr.App.1995), stated:

When reviewing an investigative detention under either state or federal law, it is accepted that "law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest." *Crockett v. State*, 803 S.W.2d 308, at 311 (Tex.Cr.App. 1991); and cases cited therein. "Nevertheless, even a temporary detention of this kind is not permissible unless the circumstances upon which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity." *Id.*, and cases cited therein. See, also, *Montano v. State*, 843 S.W.2d 579, at 581–582 (Tex.Cr.App.1992). An investigative detention is a confrontation of a citizen by law enforcement officers wherein the citizen yields to a display of authority and

is temporarily detained for purposes of an investigation.

Here, Officer Davis knew that appellant did not have the required permit; and, after talking with Mrs. Allison, the officer learned that appellant had charged Mrs. Allison $30.00 for spraying. We hold that Officer Davis conducted a proper investigative detention. Officer Davis had specific and articulable facts which, when taken together with rational inferences, reasonably warranted the intrusion. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellant's second point of error is overruled.

■ In his third point of error, appellant requests this court to reform the court's judgment and sentence revoking his community supervision and to order that appellant be given credit for the time that he spent in the county jail before his community supervision was revoked. Appellant relies upon TEX. CODE CRIM. PRO. ANN. art. 42.03, § 2(a) (Vernon Supp.1996) which provides:

*In all criminal cases* the judge of the court in which the defendant was convicted shall give the defendant credit on his sentence for the time that the defendant has spent in jail in said cause, other than confinement served as a condition of community supervision, from the time of his arrest and confinement until his sentence by the trial court. (Emphasis added)

The State maintains that the controlling statute is TEX. CODE CRIM. PRO. art. 42.12, § 15(h) (1995)[2] which reads in part:

(2) A judge *may* credit against any time a defendant is subsequently required to serve in a state jail felony facility after revocation of community supervision time served by the defendant in county jail:

(A) from the time of the defendant's arrest and confinement until sentencing by the trial court. (Emphasis added)

■ Appellant argues that Article 42.03, section 2(a) clearly applies to "all criminal cases." See *Ex parte Kuban*, 763 S.W.2d 426 (Tex.Cr.App.1989). The State responds that,

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** Article 42.12, section 15(h) was subsequently amended effective January 1, 1996. TEX. CODE CRIM. PRO. ANN. art. 42.12, § 15(h) (Vernon Supp.1996).

by using the word "may" in Article 42.12, section 15(h), the legislature intended to give the trial court discretion to give or to deny credit for jail time upon revocation of community supervision of a state jail felony. A revocation proceeding is neither a criminal nor a civil trial but rather an administrative hearing. *Cobb v. State*, 851 S.W.2d 871 (Tex. Cr.App.1993). Since, however, the revocation hearing is an extension of the original sentencing portion of the trial of a defendant, the procedures described in Article 42.12, section 15(h) relate to "criminal cases." Therefore, the two statutes are in conflict, and we look to the Code Construction Act for guidance. TEX. GOV'T CODE ANN. § 311.026 (Vernon 1988) states:

> (a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

> (b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

Article 42.12, section 15(h) deals specifically with credit for jail time following the revocation of community supervision in a state jail felony case. This specific statute controls over the general statute referring to "all criminal cases." See *State v. Mancuso*, 919 S.W.2d 86 (Tex.Cr.App.1996). Appellant's third point is overruled.

The trial court did not abuse its discretion in revoking appellant's community supervision. The judgment of the trial court is affirmed.

### On Appellant's Motion for Rehearing

Appellant argues on motion for rehearing that, because the trial court did not give him credit on his sentence for the time spent in jail, this court is "obliged by TEX.R.APP.P. 90(a) to state why this outcome does not deny equal protection of the laws and due process to Appellant."

We did not address appellant's constitutional argument in our original opinion because the question was not before us. In a supplemental brief which added additional arguments under his third point of error, appellant urged for the first time a constitutional violation. Appellant stated in his supplemental brief:

> Article 42.03 § 2(a) by its terms applies "in all criminal cases" and thus overrides any discretion granted under art. 42.12 § 15(h)(2), TEX. CODE CRIM. PROC. *In any event, art. 42.12 § 15(h)(2) must be construed in light in the equal protection guarantees of the federal and state constitutions.* See *Barnes v. State* [258 Ark. 565], 528 S.W.2d 370 (Ark.1975). (Emphasis added).

Appellant has no point of error specifically asserting a violation of either the United States Constitution or the Texas Constitution. TEX.R.APP.P. 74(d); *Heitman v. State*, 815 S.W.2d 681 (Tex.Cr.App.1991); *McCambridge v. State*, 712 S.W.2d 499, 501–502 n. 9 (Tex.Cr.App.1986). We did not address appellant's "unconstitutional" argument because appellant failed to comply with Rule 74(d). Furthermore, we elect not to address the argument on motion for rehearing.

Appellant also maintains that we did not adequately discuss the sufficiency of the evidence when passing upon his first point of error. The evidence shows that appellant unlawfully took Check No. 813 from Mrs. Allison's checkbook. He made the check out for $689.52. In his written statement, appellant stated that he signed "Mrs. Allison's" name as payor. The check, however, shows that appellant signed the check "D. E. Allison." Mrs. Allison's husband, "D. E. Allison" had been deceased for several years. Check No. 813 had the name "Mrs. D. E. Allison," along with her address, printed on the check. Appellant was unsuccessful in his attempt to cash the check.

Appellant argues that, because the check shows on its face that it was purportedly signed by "D. E. Allison" rather than "Mrs. D. E. Allison," the evidence is insufficient to support the revocation. We disagree. As we pointed out in our original opinion, it is not necessary that an allegation in a motion to revoke be in the same precise terms as

would be essential to an indictment allegation. It is only necessary that a violation of law be alleged and that fair notice be given.

The State proved by a preponderance of the evidence that appellant, with the intent to defraud and harm, knowingly made a writing purportedly to be the act of Mrs. D. E. Allison.

Appellant's motion for rehearing is overruled.