Victor Kenneth CARTER,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–03–00095–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 29, 2004.

Decided Oct. 28, 2004.

Eddie Northcutt, Sulphur Springs, for appellant.

Martin E. Braddy, Asst. Dist. Atty., Sulphur Springs, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Victor Kenneth Carter, Jr., appeals his conviction for felony assault on a family member, his long-term girlfriend, Pamela Wright.[1] *See* TEX. PEN.CODE ANN. § 22.01(b)(2) (Vernon Supp.2004–2005). Carter stipulated to the jurisdictional prior conviction for assault on a family member.[2] The sentence was enhanced to a second degree felony by a prior felony conviction for delivery of a controlled substance. *See* TEX. PEN.CODE ANN. § 12.42(a)(3) (Vernon Supp.2004–2005). Carter stipulated to this prior conviction as well. A jury found Carter guilty and assessed his punishment at seventeen years' imprisonment. The trial court sentenced him in accordance with the jury's verdict. Carter appeals, alleging the trial court erred by denying his motion to suppress and by admitting Wright's statements to the police under the "excited utterance" exception to the hearsay rule. We affirm the judgment.

## Factual Background

Carter and Wright lived as husband and wife, and had a relationship for approximately thirty years. On a rainy, stormy night, Carter and Wright became involved in a heated argument. On responding to a domestic disturbance call, Kenny Stillwagoner, an officer with the Sulphur Springs Police Department, observed Wright standing in the front yard in the rain with a "busted lip," with blood on her shirt, and with mud and grass on her clothing. Wright informed Stillwagoner that Carter had pushed her down, grabbed her by the face holding her mouth shut, and dragged her through the mud. In the process of responding to the same domestic disturbance call, Brad Horton, also with the Sulphur Springs Police Department, observed Carter walking away from the scene approximately four blocks down the street. Horton recognized Carter and detained him. When Stillwagoner radioed that an assault had occurred, Horton then requested Carter to accompany him to the house where Wright was located. After further investigation, Carter was arrested for assault on a family member. Wright testified at trial that, on the night in question, Carter did not assault her and that she fell in the flower bed. Wright did admit that her lip had been injured that night and that her shirt had blood on it. Wright also admitted she had dropped assault charges against Carter in the past at the request of her children. Wright testified she has used and still does use illegal drugs. In addition, Wright testified that "she lie[s] a lot. When you're on drugs you tend to do that."

Although Wright testified that she had lied to the police and that she simply fell that night, the jury found Carter guilty of felony assault on a family member.

## Summary

Carter contends the trial court should have granted his motion to suppress because the police detained him illegally by arresting him without a warrant and without sufficient probable cause. In addition, Carter complains the evidence did not show Wright was still under the stress of excitement caused by the event. Without Wright's statement, Carter argues there is legally insufficient evidence he committed assault on a family member. We first address whether Carter was initially ar-

---

1. Carter and Wright have two grown children. Section 71.003 of the Family Code provides that "family" includes "individuals who are the parents of the same child, with-
out regard to marriage,...." TEX. FAM.CODE ANN. § 71.003 (Vernon 2002).

2. Wright was also the victim in that case.

rested or only detained as an investigatory detention. We conclude the trial court did not abuse its discretion in finding the police only detained Carter rather than arrested him, and the transporting of Carter did not exceed the permissible bounds of an investigatory detention. Second, we address whether the trial court erred in admitting Wright's initial statements to the police under the "excited utterance" exception. We conclude the trial court did not clearly abuse its discretion. Last, this opinion determines the evidence was legally sufficient.

### Carter was not Illegally Arrested

Carter contends the trial court erred in not granting his motion to suppress because the police arrested him without sufficient probable cause or a warrant. Both Stillwagoner and Horton received a dispatch call concerning a family disturbance which allegedly occurred at 732 Fuller Street. Stillwagoner proceeded directly to 732 Fuller Street. While responding to the dispatch call, Horton observed Carter at the 300 block of Fuller Street, walking away from 732 Fuller Street. Horton testified he knew Carter well and knew him on sight. Horton called Carter over to his car and questioned him about "what was going on as far as the call that [the police] had received." When Horton received a call from Stillwagoner that an assault had occurred, Horton asked Carter to get into the car and transported him to 732 Fuller Street. The State contends Carter's detention at 300 Fuller Street constituted only an investigatory detention, but Carter contends the detention constituted an arrest.

A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of discretion standard. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.

Crim.App.1999). The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000). At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We are also to afford such deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Ross*, 32 S.W.3d at 856. We may review de novo those questions not turning on credibility and demeanor. *Id.* Where, as here, a trial court makes no explicit findings of historical fact, the appellate court should view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App.2000).

In *Harris*, Chief Justice Cornelius described the categories of police interaction with civilians as follows:

There are three general categories of police and civilian interaction. The first category is that of an encounter. Police officers do not violate the Fourth Amendment by merely approaching an individual in public to ask questions. Such an encounter does not require any justification whatsoever on the part of an officer. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986).

The second category is that of a temporary or investigative detention. This is a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Such a detention requires that the officers have a reasonable suspicion that the person detained is involved in criminal activity. *Daniels v. State,* 718 S.W.2d at 704–05.

The third category is that of an arrest. An arrest must be justified by probable cause to believe that the suspect has committed or is committing an offense. *Amores v. State,* 816 S.W.2d 407, 416 (Tex.Crim.App.1991); *see generally Francis v. State,* 896 S.W.2d 406 (Tex.App.-Houston [1st Dist.] 1995, pet. granted).

*Harris v. State,* 913 S.W.2d 706, 708 (Tex. App.-Texarkana 1995, no pet.). The central issue with which we must be concerned in this case is into which of these categories did the officer's detention of Carter fall.

■■■ "Unlike an encounter, an investigative detention and an arrest are seizures." *Josey v. State,* 981 S.W.2d 831, 838 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). Since both an investigative detention and an arrest involve a seizure of the citizen, a certain objective level of suspicion must be shown by the officer to justify the seizure. *State v. Larue,* 28 S.W.3d 549, 553 n. 8 (Tex.Crim.App.2000). If the interaction involves an investigative detention, the officer must show reasonable suspicion the citizen is connected to criminal activity. *Id.* If the interaction is an arrest, the officer must show probable cause to believe the citizen has engaged in or is engaging in criminal activity. *Francis v. State,* 922 S.W.2d 176, 178 (Tex. Crim.App.1996).

■■■ Our inquiry requires us to consider the difference between an investigatory detention and an arrest. Article 15.22 of the Code of Criminal Procedure provides that "[a] person is arrested when he has been actually placed under restraint or taken into custody...." Tex.Code Crim. Proc. Ann. art. 15.22 (Vernon 1977). The Texas Court of Criminal Appeals has interpreted the above statute to require consideration of the degree of the restriction or restraint to distinguish an arrest from other detentions.[3] The relevant inquiry according to the Texas Court of Criminal Appeals is whether "appellant had been restricted or restrained in his liberty to such a degree as to constitute an arrest." *Amores,* 816 S.W.2d at 412. An "arrest" occurs "when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority." *Medford,* 13 S.W.3d at 773. In *Medford,* the Texas Court of Criminal Appeals held an arrest is complete only if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* at 773–74 (quoting *United States v. Corral–Franco,* 848 F.2d 536, 540 (5th Cir.1988)). The subjective intent of either the police officer or the defendant is irrelevant. *Vicioso v. State,* 54 S.W.3d 104, 110 (Tex.App.-Waco 2001, pet. ref'd); *see Medford,* 13 S.W.3d at 773–74; *cf.*

---

**3.** *See Amores v. State,* 816 S.W.2d 407, 411–12 (Tex.Crim.App.1991), *modified sub silentio by Medford v. State,* 13 S.W.3d 769, 773 (Tex. Crim.App.2000), *and by Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997) (abandoning the "as consistent with innocent activity as with criminal activity" test).

*California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (show of authority should be determined objectively). Factors which Texas courts have considered are whether the officer actually undertakes an investigation,[4] the accused is handcuffed,[5] the accused is detained at gunpoint,[6] the number of police far outnumbers the citizens,[7] the use of threatening language,[8] the transporting of the accused to another location,[9] the blocking of the accused's vehicle,[10] and the use of other physical force.[11]

Carter argues that, because the arrest report indicates the place of arrest as 300 Fuller Street, he was clearly arrested at 300 Fuller Street. We note that the arrest report stated the place of arrest was 300 Fuller Street and Stillwagoner testified that may have been what he thought at the time. However, Stillwagoner was not present at 300 Fuller Street. Horton tes-

tified that he did not prepare the arrest report and that Stillwagoner was never present at 300 Fuller Street. Stillwagoner also stated he was never present at 300 Fuller Street. Further, Stillwagoner later testified Carter was initially detained at 300 Fuller Street. Stillwagoner testified Horton never informed him that he had arrested Carter at 300 Fuller Street. Horton testified Carter was only detained at 300 Fuller Street, not arrested.

Even if Stillwagoner and Horton subjectively believed they had arrested Carter, no arrest had occurred. Because a reasonable person would not have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest, Carter was merely detained rather than arrested. Horton testified that he "asked" Carter to get into the car and denied that

---

4. *Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim.App.1991); *Morris v. State*, 50 S.W.3d 89, 98 (Tex.App.-Fort Worth 2001, no pet.) (although officers did not ask suspect any questions, they did investigate); *Horton v. State*, 16 S.W.3d 848, 852 (Tex.App.-Austin 2000, no pet.); *Rodriguez v. State*, 975 S.W.2d 667, 676 (Tex.App.-Texarkana 1998, pet. ref'd); *Murray v. State*, 864 S.W.2d 111, 116 (Tex.App.-Texarkana 1993, pet. ref'd).

5. *Amores*, 816 S.W.2d at 412; *State v. Moore*, 25 S.W.3d 383, 387 (Tex.App.-Austin 2000, no pet.). However, "mere handcuffing" does not always indicate an arrest. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex.Crim.App.1997); *accord Spight v. State*, 76 S.W.3d 761, 769 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *see Nargi v. State*, 895 S.W.2d 820, 822 (Tex. App.-Houston [14th Dist.] 1995), *pet. dism'd, improvidently granted*, 922 S.W.2d 180 (Tex. Crim.App.1996).

6. *Amores*, 816 S.W.2d at 412; *Flores v. State*, 895 S.W.2d 435 (Tex.App.-San Antonio 1995, no pet.).

7. *Murray*, 864 S.W.2d at 116.

8. *Amores*, 816 S.W.2d at 411–12.

9. *Delk v. State*, 855 S.W.2d 700, 711–12 (Tex. Crim.App.1993) (transportation to police station); *Jones v. State*, 746 S.W.2d 281, 283 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd) (appellant placed under restraint by being driven around neighborhood by police officer); *Moore v. State*, 55 S.W.3d 652, 659 (Tex.App.-San Antonio 2001, no pet.) (transported suspect to jail); *Vicioso*, 54 S.W.3d at 109 (transported to sheriff's department). *But see Joseph v. State*, 865 S.W.2d 100, 103 (Tex.App.-Corpus Christi 1993, pet. ref'd) (least intrusive means available to investigate suspicion); *Davis v. State*, 783 S.W.2d 313, 317 (Tex.App.-Corpus Christi 1990, pet. ref'd), (untimely filed) (reasonable investigative detention involving transporting suspect to scene two and a half miles away).

10. *Amores*, 816 S.W.2d at 411.

11. *Amores*, 816 S.W.2d at 411–12; *Gordon v. State*, 4 S.W.3d 32, 37 (Tex.App.-El Paso 1999, no pet.) (placed in police car for an hour); *Brown v. State*, 826 S.W.2d 725, 727 (Tex.App.-Houston [14th Dist.] 1992, no pet.) (suspect pushed on hood of vehicle and held in position).

he "told" Carter to get into the car. Carter was not handcuffed or read his rights at 300 Fuller Street. Although Horton testified that Carter was not free to leave, he also testified that Carter was not informed he was under arrest or was not free to leave. After the detention occurred, Horton and Stillwagoner conducted further investigation. A reasonable person would not have believed his or her freedom of movement had been restricted to the degree associated with formal arrest. We conclude the trial court did not abuse its discretion in determining Carter was initially merely detained at 300 Fuller Street, rather than arrested.

Detention for investigation requires the officers to have a reasonable suspicion of criminal activity. The Supreme Court in *Terry v. Ohio* established the test for investigative detention, i.e., "*Terry* stops." *Terry* established a two-pronged test for investigative detentions. To determine the reasonableness of an investigative detention, the court must inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis v. State*, 947 S.W.2d 240, 242 (Tex.Crim.App.1997); *see Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

"Under the first prong, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Davis*, 947 S.W.2d at 242 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). The specific, articulable facts, along with rational inferences from those facts, must allow the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

The second prong of *Terry* requires the scope of the detention to be "like any other search, ... strictly circumscribed by the exigencies which justify its initiation." *Davis*, 947 S.W.2d at 243 (quoting *Terry*, 392 U.S. at 25, 88 S.Ct. 1868). The officer, however, must diligently pursue a means of investigation that lasts no longer than is necessary and should be the "least intrusive means reasonably available." *Id.* at 245.

Horton had reasonable suspicion to detain Carter based on the dispatch call and the subsequent radio call from Stillwagoner. Because the officers had specific, articulable facts providing reasonable suspicion Carter had committed a crime, the first prong of *Terry* is satisfied. However, the officers must have diligently pursued a means of investigation that lasted no longer than was necessary and was the "least intrusive means reasonably available."

The issue then becomes whether the officer's transporting of Carter to 732 Fuller Street was an unreasonable intrusion. We note the act of transporting a suspect to another location may be a factor indicating an arrest has occurred. *See Delk*, 855 S.W.2d at 711–12; *Jones*, 746 S.W.2d at 283; *Moore*, 55 S.W.3d at 659; *Vicioso*, 54 S.W.3d at 109–10. Under the second prong of *Terry*, the temporary detention of Carter must be reasonable. "An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Davis*, 947 S.W.2d at 245 (quoting *Perez v. State*, 818 S.W.2d 512, 517 (Tex.App.-Houston [1st Dist.] 1991, no pet.)); *see Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *see also Herrera v. State*, 80 S.W.3d 283, 287 (Tex. App.-Texarkana 2002, pet. ref'd). "The investigative methods employed should be

the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Davis,* 947 S.W.2d at 245 (quoting *Perez,* 818 S.W.2d at 517).

The Supreme Court has indicated that a nonarrest detention made on reasonable suspicion can be rendered unreasonable by excessive movement of the suspect, e.g., the movement from a field location to a station house is excessive. *See Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In *Royer,* the Supreme Court, in a plurality opinion, held movement of approximately forty feet was excessive. *Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229. The Supreme Court's concern appears to focus on the fact the movement was unrelated to any legitimate law enforcement objective and significantly changed the nature of the detention. In *Royer,* the suspect was detained on a busy airport concourse with the suspicion he was transporting narcotics. *Id.* at 494, 103 S.Ct. 1319. The suspect was then moved a distance of approximately forty feet to a small office removed from public view, and his ticket and driver's license were seized. *Id.* The Supreme Court held the movement changed the nature of the detention by placing the defendant in a small room essentially under the control of the officers and removing the detention from public view. *Id.* at 502–03, 103 S.Ct. 1319. The Supreme Court further reasoned the movement was unrelated to the objective of the detention—searching Royer's luggage—which could have just as easily been searched on the concourse. *Id.* at 505, 103 S.Ct. 1319. The Court held that the movement did not further any legitimate law enforcement purpose. *Id.* Therefore, the Supreme Court held that the methods employed in

*Royer* were not the least intrusive available. *Id.* at 505–06.

This case is clearly distinguishable from *Royer.* In our case, the movement failed to change the nature of the detention. Carter was moved from being detained in the street to being detained in front of his house. Unlike *Royer,* this move did not create an environment which removed Carter from public view or placed him more extensively under the control of the officers. Further, the movement did facilitate greater convenience in investigating the offense, unlike the situation in *Royer.* Therefore, the movement did stem from a legitimate law enforcement purpose.

Further, we note several Texas courts have held that transporting an individual to the scene of the alleged crime or another location is not an unreasonable intrusion. *Garza v. State,* No. 06–03–00058–CR, 2004 WL 527883, 2004 Tex.App. LEXIS 2467 (Tex.App.-Texarkana Mar.18, 2004, no pet.) (not designated for publication) (transporting suspect to residence in order to perform consensual search); *Joseph,* 865 S.W.2d at 103 (least intrusive means available to investigate suspicion); *Davis,* 783 S.W.2d at 317 (reasonable investigative detention involving transporting suspect to scene two and a half miles away); *see Dittoe v. State,* 935 S.W.2d 164, 166–67 (Tex.App.-Eastland 1996, no pet.) (ordered to return to victim's house, which was located a few blocks away). Because this case is distinguishable from *Royer,* we conclude the trial court did not abuse its discretion in determining Carter was merely detained at 300 Fuller Street and the subsequent transporting of Carter to the scene was reasonable.

 Carter also contends the police officers did not have probable cause to arrest him for assault/family violence. Following the reasoning of the Supreme Court that the trial court is not in an

appreciably better position than the reviewing court to make a determination concerning probable cause, the Texas Court of Criminal Appeals has held that the review of probable cause of a warrantless seizure of a person should be reviewed de novo. *Guzman,* 955 S.W.2d at 87.[12]

In reviewing a warrantless arrest to determine the existence of probable cause, courts should examine the facts known to the officer at the time of the arrest. *Atkins v. State,* 919 S.W.2d 770, 774 (Tex.App.-Houston [14th Dist.] 1996, no pet.). "Subsequently discovered facts or later-acquired knowledge, like the fruits of a search, cannot retrospectively serve to bolster probable cause at the time of the arrest." *Id.* Probable cause exists if the officers have reasonably trustworthy information sufficient to warrant a reasonable belief an offense has been or is being committed. *McGee v. State,* 105 S.W.3d 609, 614 (Tex.Crim.App.2003). While probable cause requires more than mere suspicion, it requires far less evidence than the evidence needed to support a conviction. *Middleton v. State,* 125 S.W.3d 450, 460 (Tex.Crim.App.2003).

When Carter was arrested at 732 Fuller Street, the officers had been informed by Wright that Carter had pushed her down, grabbed her by the face holding her mouth shut, and dragged her through the mud. Stillwagoner had observed that Wright had a "bloody lip" and had mud, grass, and blood on her shirt. We conclude the police officers had probable cause to arrest Carter.

Carter's last argument is the police officers illegally arrested him without a warrant. In Texas, a police officer may make a warrantless arrest only if "(a) there is probable cause with respect to that individual, and (b) the arrest falls within one of the exceptions specified in the Texas Code of Criminal Procedure." *McCraw v. State,* 117 S.W.3d 47, 54 (Tex. App.-Fort Worth 2003, pet. ref'd); *see* Tex. Code Crim. Proc. Ann. arts. 14.01, 14.02, 14.04 (Vernon 1977), art. 14.03 (Vernon Supp.2004–2005). Section 14.03(a)(4) provides that a peace officer may arrest "persons who the peace officer has probable cause to believe have committed an assault resulting in bodily injury to a member of the person's family or household." Tex. Code Crim. Proc. Ann. art. 14.03(a)(4); *see McCraw,* 117 S.W.3d at 54. Because Horton and Stillwagoner had probable cause to believe an assault involving bodily injury occurred, the statute permitted the warrantless arrest of Carter.

Carter cites *McCraw* for the proposition the police could not arrest a suspect without a warrant when the alleged assault did not occur in the presence of the arresting officer. This is an incorrect reading of *McCraw. McCraw* held that a police officer could arrest a suspect if he or she either observed the assault or had probable cause to believe an assault on a family member occurred. *McCraw* stated that "[f]or an officer to effect a warrantless arrest for an assault, the assault must either occur in the officer's presence or view *or* the officer must have probable cause to believe that the assault resulted in bodily injury to a member of the suspect's family or household." *McCraw,* 117 S.W.3d at 54 (emphasis added). In *McCraw,* the court determined the officer did not observe the alleged assault and did not have probable cause to believe that

---

**12.** We note that review of a seizure pursuant to a warrant should be whether the issuing magistrate had a substantial basis for concluding there was probable cause. *Ill. v. Gates,* 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see Swearingen v. State,* 143 S.W.3d 808 (Tex.Crim.App. 2004).

bodily injury occurred. *Id.* This case is distinguishable from *McCraw* because the police had probable cause to believe that Carter had intentionally or knowingly caused bodily injury to a family member.

We hold the trial court did not abuse its discretion in denying the motion to suppress. The trial court did not abuse its discretion in determining that Carter's detention at 300 Fuller Street was merely an investigatory detention. The trial court also did not abuse its discretion in concluding the subsequent transporting of Carter to 732 Fuller Street was reasonable. We conclude the officers had probable cause to arrest Carter and a warrantless arrest was authorized under the exceptions to the requirement of a warrant.

### Wright's Statements were Excited Utterances

■ In his second point of error, Carter alleges the trial court erred by admitting hearsay under the "excited utterance" exception.[13] Carter contends the State presented insufficient evidence the statements were "excited utterances." According to Carter, the evidence would be insufficient to support the jury's verdict without the hearsay testimony.

■ A trial court's decision concerning the admission of evidence under an exception to the hearsay rule, including the "excited utterance" exception, should not be reversed on appeal unless a clear abuse of discretion is shown. *Zuliani v.*

*State,* 97 S.W.3d 589, 595 (Tex.Crim.App. 2003). An abuse of discretion occurs only when the trial court's decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* (quoting *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App.1992)).

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). Hearsay should not be admitted except as provided by statute or by the Rules of Evidence. TEX.R. EVID. 802. "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. TEX.R. EVID. 803(2). This exception is called the "excited utterance" exception. Under the "excited utterance" exception, three requirements must be shown:

(1) the statement must be the product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous and unreflecting,

(2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent, and

(3) the statement must relate to the circumstances of the occurrence preceding it.

---

13. We note the Supreme Court recently set out a new test for challenges to out-of-court statements based on the Confrontation Clause. *See Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Supreme Court's opinion in *Crawford* was issued after Carter's trial had concluded. *Crawford* noted that "[t]he Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* at 1369. This Court and the Dallas Court of Appeals have both held there is no violation of the Confrontation Clause under *Crawford* when a witness actually testifies at trial. *Crawford v. State,* 139 S.W.3d 462 (Tex.App.-Dallas 2004, pet. filed); *Mason v. State,* No. 06–03–00199–CR, 2004 WL 1615785, 2004 Tex.App. LEXIS 6458 (Tex. App.-Texarkana July 20, 2004, no pet.) (memo.op.) (not designated for publication). Because Wright testified at trial, the Confrontation Clause was not violated.

*Harris v. State,* 133 S.W.3d 760, 771 (Tex. App.-Texarkana 2004, pet. ref'd). It is the absence of opportunity for reflection and fabrication—an opportunity lost because the declarant is in the grips of overwhelming emotion—that forms the basis for the "excited utterance" exception. *Id.* "In other words, the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event." *Id.* (quoting *Zuliani,* 97 S.W.3d at 595).

The paramount factor is whether the declarant is still dominated at the time by emotions triggered by the principal act or event. *Snellen v. State,* 923 S.W.2d 238, 243 (Tex.App.-Texarkana 1996, pet. ref'd); *see King v. State,* 953 S.W.2d 266, 269 (Tex.Crim.App.1997). Therefore, statements made while the declarant was in the grip of emotion, excitement, fear, or pain of the exciting event are still admissible even after an appreciable time has elapsed between the exciting event and the statement. *Salazar v. State,* 38 S.W.3d 141, 154 (Tex.Crim.App.2001); *Snellen,* 923 S.W.2d at 243; *Jones v. State,* 772 S.W.2d 551, 554–55 (Tex.App.-Dallas 1989, pet. ref'd); *see Hawkins v. State,* 792 S.W.2d 491, 494–95 (Tex.App.-Houston [1st Dist.] 1990, no pet.). Whether the statement was made in response to questioning is simply a factor to be considered, and the statement may still qualify as an excited utterance. *Salazar,* 38 S.W.3d at 154.

Over the defense's objection, the trial court allowed the State to introduce evidence of Wright's statements to the police minutes after the incident occurred. When she made the statements, Wright was still upset and crying due to the assault. Stillwagoner testified outside the presence of the jury as follows:

[State] And what was Ms. Wright's state when you got there?

[Stillwagoner] She was pretty upset, crying. She was soaking wet.

[State] By pretty upset what do you mean?

[Stillwagoner] Crying and just, you know, upset.

[State] Would you say slighty upset or would you say very upset?

[Stillwagoner] I would say very upset.

. . . .

[State] And she was crying, she was very upset. Anything else you noticed about her?

. . . .

[Stillwagoner] Yeah, there was grass and dirt on her clothing and I noticed grass and dirt on her face. She had a bloody lip and there was blood on the front of her shirt.

[State] Was it just a drop or two or what?

[Stillwagoner] It was some good size spots. It wasn't drops.

. . . .

[Defense Counsel] Was she so upset at the time you talked to her that you couldn't even talk to her?

[Stillwagoner] No.

[Defense Counsel] In other words, she was settled down enough where you could talk to her?

[Stillwagoner] I had calmed her down some, yes.

. . . .

[Defense Counsel] She was in control of herself to the point where she could remember what had happened minutes and maybe hours before; is that correct?

[Stillwagoner] Sure.

. . . .

[State] Did she seem like she was still excited and very upset from what had

happened to her when she was talking to you?

[Stillwagoner] Yes.

[State] And when she told you all these things?

[Stillwagoner] Yes.

[State] Did she seem like she was calmly and coolly reflecting upon what had happened and was she still excited?

[Stillwagoner] Yes, she was still excited.

[State] So she wasn't calmly and coolly reflecting then, was she?

[Stillwagoner] No, sir.

. . . .

[Defense Counsel]. . . . But she was relating this to you and it's not to the point to where she was totally dominated by emotion; is that correct?

[Stillwagoner] As I had calmed her down enough to talk to me.

. . . .

[Court] All right. Now the Court, if I understood you right, you said you arrived—the call came and you arrived between two and three minutes later?

[Stillwagoner] Yes, sir.

[Court] And you said that she was in an emotional state at that point? She was—

[Stillwagoner] Very upset.

[Court]—very upset. And were there tears or crying?

[Stillwagoner] Yes, sir.

The trial court did not clearly abuse its discretion in finding Wright was still in the grip of emotion, excitement, fear, or pain caused by the assault when she made her statements to the police. Stillwagoner testified he arrived at the scene approximately two or three minutes after the dispatch. He testified Wright was extremely upset and was still crying. Although Stillwagoner testified Wright had calmed down to a certain extent, the issue of whether she was still under the influence of the excitement of the assault is within the zone of reasonable disagreement. The trial court did not clearly abuse its discretion in admitting Wright's statement as an excited utterance.

## The Evidence is Legally Sufficient

■ Carter argues that, without the hearsay evidence admitted under the excited utterance exception, there is legally insufficient evidence to support the jury's verdict. Because legal sufficiency was raised in the point of error concerning the alleged error in admitting Wright's statements to police, we will address whether legally sufficient evidence exists to support the jury's verdict.

■ In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on the court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.1991).

Section 22.01 provides that a person commits an offense if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse" and that the offense is a felony of the third degree if it is committed against "a member of the defendant's family or household, if it is shown on the trial of the offense that the defendant has been previously convicted of an offense against a member of the defendant's family or household under this section." TEX. PEN. CODE ANN. § 22.01 (Vernon Supp.2004–2005). Section 22.01 states that " '[f]amily'

has the meaning assigned by Section 71.003, Family Code." TEX. PEN.CODE ANN. § 22.01. Section 71.003 of the Family Code provides that "family" includes "individuals who are the parents of the same child, without regard to marriage,...." TEX. FAM.CODE ANN. § 71.003.

Viewed in a light most favorable to the prosecution, sufficient evidence exists for a rational jury to conclude beyond a reasonable doubt Carter committed the offense. Stillwagoner observed Wright at the scene with a "bloody lip," with blood on her shirt, and with mud and grass on her clothing. Wright informed Stillwagoner that Carter had pushed her down, grabbed her by the face holding her mouth shut, and dragged her through the mud. Wright testified Carter had been previously convicted of assaulting her, Carter stipulated to the prior assault, and the State introduced the judgment of the previous assault. Wright testified she and Carter have two children. We conclude legally sufficient evidence exists.

## Conclusion

The trial court did not abuse its discretion in denying the motion to suppress or in admitting Wright's statements to the police under the "excited utterance" exception. Legally sufficient evidence exists to support the conviction.

We affirm the judgment.