In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00096-CR
______________________________


RONALD LYNN HODGES, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 21073


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Ronald Lynn Hodges appeals from his conviction by a jury for the offense of felon
in possession of a firearm. Hodges pled true to two prior theft convictions, and the jury
assessed his punishment at sixty years' imprisonment. 
Â Â Â Â Â Â Â Â Â Â Hodges contends on appeal the trial court erred by denying his pretrial motion to
suppress evidence (a derringer) found by officers when they searched Hodges after his
arrest. At a relatively brief hearing, one police officer, Terry Eddington, testified, and the
court watched a videotape of the interaction between police officers and Lisa Tunston,
Hodges' occasional girlfriend, and between the officers and Hodges. The evidence shows
that Tunston called police complaining Hodges had broken the headlights on her car. 
When officers, including Eddington, arrived, it was apparent the headlights were
undamaged and had merely been switched from automatic to manual operation. Tunston
also complained, however, that Hodges had struck her and scratched her. 
Â Â Â Â Â Â Â Â Â Â After Tunston filled out a report, the officers went to Hodges' residence and directed
him to step outside. When he complied, the officers arrested him. One officer asked
Hodges if he had anything in his pockets that would stick or poke him, and Hodges told the
officer he had a gun in his pocket. 
Â Â Â Â Â Â Â Â Â Â Eddington testified at the suppression hearing he had responded to several calls
related to "squabbling" between Tunston and Hodges and had, on occasions, found them
in the same bedroom, sleeping together. He did not testify he thought they lived together
or had ever lived together. Eddington testified that, on the occasion in question, Tunston
was distraught and that he saw scratches on her neck. He also testified Tunston told him,
"somebody is going to get hurt bad." The videotape contains Tunston's statement to the
officers that she and Hodges were dating. 
Â Â Â Â Â Â Â Â Â Â The trial court concluded that, because Tunston was still in the neighborhood at the
time the officers went to Hodges' residence, and because Eddington knew Tunston and
Hodges had gotten together repeatedly despite having had problems between them on
numerous occasions, the officers had probable cause to believe there was danger of future
bodily injury.
Â Â Â Â Â Â Â Â Â Â Hodges contends the trial court erred in denying his motion to suppress because
the officer lacked probable cause to believe there was a danger of further injury to Tunston. 
He further contends the incident was functionally equivalent to an unlawful arrest in
Hodges' home, in violation of both the Texas Code of Criminal Procedure and the Fourth
Amendment to the United States Constitution. 
Â Â Â Â Â Â Â Â Â Â The second series of contentions suggesting Hodges was unlawfully arrested in his
home were never broached at the hearing before the trial court, and thus no ruling was
ever obtained on the argument now brought before us. That contention has not been
preserved for our review. See Tex. R. App. P. 33.1. 
Â Â Â Â Â Â Â Â Â Â We turn to the initial contention, that the arrest was unlawful because the officers
did not obtain an arrest warrant and because the information available to the officers was
insufficient to allow them to formulate the probable cause necessary to justify a warrantless
arrest.
Â Â Â Â Â Â Â Â Â Â A trial court's decision to grant or deny a motion to suppress is reviewed under an
abuse of discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). 
The general rule is that an appellate court should afford almost total deference to a trial
court's determination of the historical facts supported by the record, especially when the
trial court's fact-findings are based on an evaluation of credibility and demeanor. State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). At a suppression hearing, the trial court
is the exclusive trier of fact and judge of the credibility of the witnesses. Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We are also to afford such deference to a trial
court's ruling on "application of law to fact questions," also known as "mixed questions of
law and fact," if the resolution of those questions turns on an evaluation of credibility and
demeanor. Ross, 32 S.W.3d at 856. We may review de novo those questions not turning
on credibility and demeanor. Id. Where, as here, a trial court makes no explicit findings
of historical fact, we view the evidence in the light most favorable to the trial court's ruling
and assume the trial court made implicit findings of fact. Carmouche v. State, 10 S.W.3d
323, 327â28 (Tex. Crim. App. 2000); Carter v. State, 150 S.W.3d 230, 235 (Tex.
App.âTexarkana 2004, no pet.).
Â Â Â Â Â Â Â Â Â Â In Texas:
(a)Any peace officer may arrest, without warrant:
Â 
. . . .
Â 
(2)persons who the peace officer has probable cause to believe
have committed an assault resulting in bodily injury to another person and
the peace officer has probable cause to believe that there is danger of
further bodily injury to that person; . . . .

Tex. Code Crim. Proc. Ann. art. 14.03(a)(2) (Vernon 2005). 

Â Â Â Â Â Â Â Â Â Â In this case, the officers had probable cause to believe an assault had been
committed. Eddington observed the injury on Tunston's neck where she said Hodges had
scratched her. Eddington also knew Tunston and Hodges had a history indicating that,
because of their inability to stay away from each other, further altercations between them
were likely to occur.
Â Â Â Â Â Â Â Â Â Â In reviewing a warrantless arrest to determine the existence of probable cause, we
look to the facts known to the officer at the time of the arrest. Amores v. State, 816 S.W.2d
407, 415 (Tex. Crim. App. 1991). Whether probable cause exists is determined by
considering the totality of the circumstances. Id. at 413. 
Â Â Â Â Â Â Â Â Â Â There was evidence before the trial court supporting its denial of the motion to
suppress. Viewing that evidence in the light most favorable to the trial court's ruling, we
cannot conclude the court abused its discretion by so holding. The contention of error is
overruled.
Â Â Â Â Â Â Â Â Â Â We affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â April 21, 2005
Date Decided:Â Â Â Â Â Â Â Â Â June 6, 2005

Do Not Publish





 Dallas
County's motion for summary judgment because of his affirmative defense of laches. To
prove the affirmative defense of laches, or stale demand, the defendant must show that
the plaintiff delayed asserting its legal or equitable rights and that such delay was
unreasonable, and that any change in the defendant's position, to its detriment, caused by
the delay, was made in good faith. See Urban Elec. Servs., Inc. v. Brownwood Indep. Sch.
Dist., 852 S.W.2d 676 (Tex. App.-Eastland 1993, no writ), citing Rogers v. Ricane Enters.,
Inc., 772 S.W.2d 76, 80 (Tex. 1989). 

 Barua contends that, because the City of Dallas waited from 1995 to 1998 before
demolishing his property, he, in reliance on this inaction, made improvements to his
property and started paying his taxes to the best of his ability, believing the government
would no longer demolish his property. He contends, therefore, this delay by the City of
Dallas, in exercising its right to demolish, was unreasonable and that he took a position to
his financial detriment because of the delay. 

 Although the URSB did affirm its previous order to demolish in May 1995, the record
clearly shows Barua sought and obtained a series of temporary orders preventing the City
of Dallas from demolishing the property. The City of Dallas was under court orders from
June 1995 until November 1997 restraining it from demolishing the property. Once the
final restraint order expired, the City of Dallas demolished the property in March 1998. 
Clearly, the City of Dallas did not delay in asserting its legal or equitable rights. For almost
the entire period of time, from issuance of the order to demolish to the demolition, Barua
legally prevented the City of Dallas from carrying out the order to demolish. It cannot be
said that waiting over 120 days from the date of the lifting of the final restraining order to
demolish the property presented an unreasonable delay by the City of Dallas in exercising
its legal right. 

 Further, Barua failed to raise a fact issue under the second prong of the defense of
laches that any change in his position to his detriment caused by the delay was made in
good faith. For most of the time from June 1995 until November 1998, Barua legally
prevented the City of Dallas from acting on its demolition order. Barua's actions to prevent
the demolition show he did not, in good faith, rely on a belief the City of Dallas was merely
failing to act on the demolition order or had abandoned its desire to demolish the property,
thus inducing Barua to expend money to improve the property and pay the taxes. Barua's
affidavit, attached to his response to the motion for summary judgment, stated: "[a]fter the
ninety days were up, the City still didn't destroy my buildings. I was surprised. I thought
they had changed their minds, or at least that I would hear more from them if they decided
to destroy the buildings after all." However, in its motion for summary judgment, Dallas
County attached certain court documents and orders from the court case where Barua had
sued it. The first order, dated June 15, 1995, about a month after the URSB's order to
demolish the buildings, ordered the City of Dallas and its agents to "desist and refrain from
proceeding or continuing with in any manner the demolition of the property of Plaintiff
known as 2727 Kings Road, . . . ." Although Barua states in his brief that, in reliance on
the City of Dallas' inaction, he made improvements to the property, he fails to cite to the
record showing proof of these improvements, and a review of his evidence does not show
any improvements or expenditures during this period. All the money expended on
improvements appears to have been expended between 1993 and 1995. Barua failed to
raise a fact issue as to either of the elements of his defense of laches. 

 Because Barua failed to raise a fact issue as to his defense of laches, we need not
reach Dallas County's contention that this defense is inapplicable to it. See City of Fort
Worth v. Johnson, 388 S.W.2d 400, 403-04 (Tex. 1964). We hold the trial court did not err
in granting Dallas County's motion for summary judgment.

 In his third point of error, Barua contends the demolition lien against his property
arose from an order for demolition that was executed illegally and in violation of his due
process rights under the United States Constitution. 

 The Fourteenth Amendment prohibits the government from depriving "any person
of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. 
Barua concedes in his brief that he received notice of the hearings held by the City of
Dallas regarding the proposed demolition of his buildings and that he attended most if not
all such hearings. Barua's complaint is not that the initial notice was not adequate to
protect his due process rights, but rather that he received no further notice to demolish the
building after the first order from the URSB. He contends that, by waiting from 1995 to
1998 before demolishing the building, without giving him further notice, the City of Dallas
violated his due process rights. In his affidavit, Barua states he believed he would receive
notice of demolition if the City of Dallas planned to demolish the building. However, the
notice of demolition given to Barua does not state he would be given notice of the City of
Dallas' intention to demolish. Rather, the notice says:

 If you do not complete the demolition or clearance of the premise(s) within
the time above indicated [ninety days to vacate and an additional thirty to
demolish], the city will arrange to have this work done, and the expense of
that demolition performed under contract with the city will constitute a lien on
the real property . . . . 


 Based on the lawsuit against the City of Dallas filed by Barua, and the temporary
restraining orders sought and received by him to prevent the city from demolishing his
building from June 1995 until November 1997, Barua knew the City of Dallas could not
demolish his building during this time. The City of Dallas did not simply fail to act on this
notice to demolish for years and then suddenly and unexpectedly decide to enforce it. 
Rather, the City of Dallas demolished the property more than 120 days after the final
temporary restraining order expired. This period of time gave Barua the 120 days granted
in the URSB's order to demolish before the City of Dallas took action. Barua was fully
aware of the City of Dallas' demand that the property be demolished and prevented the
City of Dallas from enforcing its order for two years and five months. There is no indication
the City of Dallas was required to give another notice after the termination of the final
temporary restraining order, and Barua does not complain the original notice given by the
City of Dallas failed to provide adequate notice or violated his due process rights. 

 In Barua's final point of error, he contends the City of Dallas demolished his building
in violation of chapter 27, article IV, section 13(B)(4) of the Dallas City Code, thereby
conclusively negating an element of the Dallas County action of foreclosure and the
demolition lien. However, a review of Barua's motion for summary judgment, motion for
partial summary judgment, and response to plaintiff's motion for summary judgment shows
he never complained to the trial court that the notice of the demolition hearing violated
chapter 27, article IV, section 13(B)(4) of the Dallas City Code. In order to present a
complaint for appellate review, Barua must show he made the complaint to the trial court. 
Tex. R. App. P. 33.1. Barua failed to properly preserve this complaint for appellate review.


 We overrule each of Barua's points of error and affirm the trial court's judgment.





 Donald R. Ross

 Justice

 

Date Submitted: January 17, 2003

Date Decided: March 6, 2003

1. Tex. Tax Code Ann. Â§ 33.56 (Vernon 2001) provides as follows:


 (a) If, in a suit to collect a delinquent tax, a court renders a
judgment for foreclosure of a tax lien on behalf of a taxing unit, any taxing
unit that was a party to the judgment may file a petition to vacate the
judgment on one or more of the following grounds: 


 (1) failure to join a person needed for just adjudication
under the Texas Rules of Civil Procedure, including a taxing unit
required to be joined under Section 33.44(a); 


 (2) failure to serve a person needed for just adjudication
under the Texas Rules of Civil Procedure, including a taxing unit
required to be joined under Section 33.44(a);


 (3) failure of the judgment to adequately describe the
property that is the subject of the suit; or


 (4) that the property described in the judgment was subject
to multiple appraisals for the tax years included in the judgment. 


 (b) The taxing unit must file the petition under the same cause
number as the delinquent tax suit and in the same court.


 (c) The taxing unit may not file a petition if a tax sale of the
property has occurred unless:


 (1) the tax sale has been vacated by an order of a court; 


 (2) the property was bid off to a taxing unit under Section
34.01(j) and has not been resold; or


 (3) the tax sale or resale purchaser, or the purchaser's
heirs, successors, or assigns, consents to the petition.


 (d) Consent of the purchaser to a petition may be shown by: 


 (1) a written memorandum signed by the purchaser and
filed with the court;


 (2) the purchaser's joinder in the taxing unit's petition; 


 (3) a statement of the purchaser made in open court on the
record in a hearing on the petition; or 


 (4) the purchaser's signature of approval to an agreed order
to grant the petition.


 (e) A copy of the petition must be served in a manner authorized
by Rule 21a, Texas Rules of Civil Procedure, on each party to the delinquent
tax suit. 


 (f) If the court grants the petition, the court shall enter an order
providing that:


 (1) the judgment, any tax sale based on that judgment, and
any subsequent resale are vacated; 


 (2) any applicable tax deed or applicable resale deed is
canceled; 


 (3) the delinquent tax suit is revived; and 


 (4) except in a case in which judgment is vacated under
Subsection (a)(4), the taxes, penalties, interest, and attorney's fees
and costs, and the liens that secure each of those items, are
reinstated.