In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00158-CR


______________________________




MICHAEL JENKINS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


 Gregg County, Texas


Trial Court No. 35619-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 After Michael Jenkins' vehicle was lawfully stopped by Texas State Trooper Christopher
Brock and a fellow officer, and after Jenkins was given a warning for speeding and refused his
consent for officers to search the vehicle, officers immediately requested a drug dog. (1) Jenkins'
extended detention--beyond the initial speeding investigation and decision to issue a warning
only--lasted approximately thirty minutes before the dog (2) arrived on the scene, sniffed the exterior
of the vehicle, and alerted, suggesting to officers the presence of narcotics inside. (3) 

 Once Jenkins' pretrial motion to suppress the evidence resulting from the detention was
overruled, Jenkins pled guilty to possession of a controlled substance and was sentenced to twelve
years' imprisonment.

 On appeal, Jenkins attacks the denial of his motion to suppress and asserts failure to consider
the full range of available punishment. Because the officers lacked reasonable suspicion of Jenkins'
criminal activity to justify his extended detention, the controlled substances, found only as the result
of that detention, must be excluded from evidence. We, therefore, reverse Jenkins' conviction.

 Jenkins does not challenge the initial detention for speeding. (4) Instead, Jenkins argues both
that Brock lacked reasonable suspicion to detain him further, after the initial purpose for the traffic
stop had been accomplished and that the length of the extended detention was unreasonable. While
a police officer may request consent to search a vehicle after the purpose of a traffic stop has been
accomplished, the police officer must have reasonable suspicion of some criminal activity to further
detain the occupants or vehicle if consent is refused. Caraway v. State, 255 S.W.3d 302, 310 (Tex.
App.--Eastland 2008, no pet.); Spight v. State, 76 S.W.3d 761, 768 (Tex. App.--Houston [1st Dist.]
2002, no pet.); Leach v. State, 35 S.W.3d 232, 236 (Tex. App.--Austin 2000, no pet.); Simpson v.
State, 29 S.W.3d 324, 328 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). At issue here is that
extended detention.

 We review the trial court's decision on a motion to suppress evidence by applying a
bifurcated standard of review deferring to the trial court's determination of historical facts that
depend on credibility, but reviewing de novo the trial court's application of the law. Wiede v. State,
214 S.W.3d 17, 25 (Tex. Crim. App. 2007); see Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any
theory of law that finds support in the record." Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim.
App. 2006); see Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, after
granting deference to the trial court's determination of historical facts, we review de novo
determinations of reasonable suspicion and probable cause. Guzman, 955 S.W.2d at 87.

 Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, the police must be able "to point
to specific and articulable facts which, taken together with rational inferences from those facts,"
support a reasonable suspicion that the suspect is engaging in, or is about to engage in, criminal
activity. United States v. Sokolow, 490 U.S. 1, 10 (1989); Davis v. State, 947 S.W.2d 240, 242 (Tex.
Crim. App. 1997). "The behavior of the suspect need not suggest the commission of a particular
offense; any sufficiently suspicious criminal activity may justify a stop." Hill v. State, 951 S.W.2d
244, 247 (Tex. App.--Houston [14th Dist.] 1997, no pet.). Here, again, we do not consider the
obviously valid initial stop, but Jenkins' extended detention after officers decided to issue him only
a warning for the initial offense, speeding, that warranted his initial stop.

 Terry established a two-pronged test for investigative detentions. To determine the
reasonableness of an investigative detention, the court must inquire: "(1) whether the officer's action
was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances
which justified the interference in the first place." Davis, 947 S.W.2d at 242 (quoting Terry, 392
U.S. at 19-20). Under the first prong of Terry, "the police officer must be able to point to specific
and articulable facts which, taken together with rational inferences from those facts, reasonably
warrant that intrusion." Davis, 947 S.W.2d at 242 (quoting Terry, 392 U.S. at 21).

 The facts supporting reasonable suspicion must be considered in the context of the "totality
of the circumstances" because "facts that do not show reasonable suspicion in isolation may do so
when combined with other facts." Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). 
While none of the facts testified to by Brock would be sufficient to create reasonable suspicion for
the extended detention, if considered alone, (5) the question before us is whether the facts are sufficient
when considered together.

 In his testimony, Brock articulated three main facts causing his suspicion and the extended
detention: that Jenkins was "extremely nervous," that Jenkins denied having a criminal history, and
that the route Jenkins claimed to have taken was not the most direct route between Huntsville and
Longview. To support the categorization of Jenkins' nervousness, Brock testified Jenkins refused
to make eye contact, Jenkins' voice was "real shaky," and "it's not that ordinary for someone to be
that nervous." Brock also conducted a criminal background check of Jenkins' driver's license and
"discovered he'd been handled before for narcotics violations." Brock testified that, when he asked
Jenkins whether "he'd ever been arrested," Jenkins "stated no, he'd never been arrested." Brock also
testified that the route Jenkins claimed to be taking seemed suspicious. Jenkins claimed to be
traveling from Huntsville to Gilmer with a planned intermediate stop in Longview. According to
Brock, Jenkins claimed to have traveled Highway 19 through Canton and then to have turned east
onto Interstate 20. Brock believed there were more direct routes for the described trip and testified
that he discussed the alternatives with Jenkins. (6)

 Some of that testimony is undermined by the video evidence. The Texas Court of Criminal
Appeals has held the "almost total deference" standard of review continues to apply even when the
"determination is based on a videotape recording admitted into evidence at a suppression hearing." 
Montanez v. State, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006) (rejecting suggestion in Carmouche
v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000), that deferential review should not apply to
videos because review does not depend on evaluation of credibility and demeanor); see Ex parte Van
Alstyne, 239 S.W.3d 815, 825 (Tex. Crim. App. 2007). The court, though, noted "[u]nder the
appropriate circumstances, a video recording can be evidence of a compelling nature that requires
that we discount testimony that conflicts with the recording." Van Alstyne, 239 S.W.3d at 825.

 We are forced to conclude Brock did not have reasonable suspicion to extend Jenkins'
detention after concluding the traffic stop investigation. We reach this result because the facts
articulated by the officers to justify the suspicion of Jenkins are either marginal or unwarranted. And
those that we view as marginal, even if viewed at full strength and together, are insufficient to
support reasonable suspicion to warrant the extended detention.

 After carefully reviewing the video, we find that it compels us to reject the testimony that
Jenkins denied having any criminal history. The video of the events is clear that Jenkins admitted
to having a criminal record, which refutes Brock's testimony that he denied having a record. While
Jenkins did not itemize all offenses, he was not specifically asked to itemize them. He was asked
first whether he had ever been arrested, to which he answered, "Yeah, I have." The next question
was what he had been arrested for. He answered by starting to list some items before the officer
continued the dialogue about other things. The video does not show any effort by the officers to get
from Jenkins an exhaustive list of his offenses. Based on the way the inquiries were made and
responded to, we fail to see the reasonable suspicion this supplies to the situation.

 We also find that the video evidence is compelling to refute at least part of the route
discussion. Brock testified that Jenkins claimed to have traveled up State Highway 19 through
Canton before taking I-20 east toward Longview. Traveling through Canton would certainly be out
of Jenkins' professed way. But the video evidence is clear and compelling that, before the speeding
investigation was completed (7) and the extended detention was begun, Jenkins was involved in no
discussion mentioning Highway 19 or Canton. (8) Therefore, the officers could not have learned from
Jenkins anything about Highway 19 or Canton until after they had extended the detention. Facts
creating reasonable suspicion which are acquired by the police after the challenged detention has
begun cannot justify the (here, extended) detention at its outset. St. George v. State, 237 S.W.3d
720, 726 (Tex. Crim. App. 2007). In St. George, the defendant gave a false name to the police, but
police did not discover the name was false until after the detention had begun. Id. The court cited
Terry for the proposition that "an officer's actions must be justified at its inception." Id. The court
held that "giving a false name when officers did not know it was false could not give them
reasonable suspicion to investigate further." Id.

 What is left of the route discussion as possible support for reasonable suspicion is a
difference of opinion about which route from Huntsville to Longview was better, a more westerly
route professed by Jenkins--which may be better supported by Huntsville's location to the northwest
of Houston--or the more easterly route preferred by Brock. 

 While the video does not reveal any excessive or obvious nervousness from Jenkins, we defer
to the testimony that Jenkins displayed nervousness in his voice and his failure to make eye contact,
elements not clearly refuted by the video. (9) Thus, we are left with only Jenkins' assertedly suspicious
route and nervousness as specific, articulable facts which may have given rise to reasonable
suspicion, and thus may have authorized the extended detention.

 Nervousness, conflicting statements of the occupants, and denial of prior drug arrests can be
sufficient to warrant further detention. See Powell v. State, 5 S.W.3d 369, 378-79 (Tex.
App.--Texarkana 1999, pet. ref'd). Here, having only one occupant, there are no conflicting
statements of occupants. Plus, we have already noted Jenkins' admission to at least some criminal
history. Nonetheless, "[n]ervous, evasive behavior is a pertinent factor in determining reasonable
suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Nervousness alone, however, is not
sufficient to justify detention. St. George, 237 S.W.3d at 726.

 So what we are left with is a questioned (allegedly less than optimal) route and a nervous
individual. The parties have not cited to us any case that finds reasonable suspicion based on those
two factors alone. Thus, we conclude officers did not have reasonable suspicion to extend Jenkins'
detention. We sustain this point of error and, therefore, reverse the judgment of the trial court and
remand this case to the trial court for further proceedings.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 2, 2009

Date Decided: January 16, 2009


Do Not Publish
1. According to Brock's vehicle-based video recording, at about 10:28 p.m. November 15,
2006, Brock stopped the vehicle driven by Jenkins for traveling seventy miles per hour in a sixty-five-mile-per-hour speed zone. At about 10:43, Brock issued Jenkins a warning for speeding and
requested consent to search the vehicle. About 10:45, Jenkins refused to consent to a search. 
2. According to the video, the drug dog first sniffed at Jenkins' vehicle at about 11:13 p.m. and
alerted shortly thereafter.
3. A search of the vehicle discovered 2,999 Hydrocodone pills and several soda bottles
containing liquid Codeine. 
4. "A routine traffic stop resembles an investigative detention." State v. Cardenas, 36 S.W.3d
243, 246 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd). A law enforcement officer may lawfully
stop and detain a person for a traffic violation committed in the presence of the officer. Garcia v.
State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Zervos v. State, 15 S.W.3d 146, 151 (Tex.
App.--Texarkana 2000, pet. ref'd). No doubt, Brock had reasonable suspicion to make the initial
stop of Jenkins for speeding.
5. Many of the specific, articulable facts referenced by Brock are "as consistent with innocent
as with criminal activity." As this Court has noted in the past, the Texas Court of Criminal Appeals
has abandoned the "as consistent with innocent activity as with criminal activity" test. See Carter
v. State, 150 S.W.3d 230, 236 n.3 (Tex. App.--Texarkana 2004, no pet.); see also Curtis v. State,
238 S.W.3d 376, 378 (Tex. Crim. App. 2007); Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App.
1997). "The possibility of an innocent explanation does not deprive the officer of the capacity to
entertain reasonable suspicion of criminal conduct." Curtis, 238 S.W.3d at 379 (quoting Woods, 956
S.W.2d at 37).
6. Although Jenkins' testimony contradicted portions of Brock's account, we are required to
defer to the trial court's factual findings, except as to appropriate corrections from the video
evidence. Jenkins testified his voice was shaky because of the cold and the wind. Jenkins admitted
he did not tell Brock about being placed on deferred adjudication for possession of cocaine, but
claimed he did tell Brock he had been convicted for possession of marihuana and criminal mischief. 
Jenkins testified he "would have mentioned [the deferred adjudication] but [Brock] cut me off and
started talking to me." Jenkins also claimed he told Brock he traveled through Crockett, not Canton. 
Jenkins denied telling Brock he had traveled through Canton. When asked if Canton was "way out
of your way," Jenkins agreed. The trial court could reasonably believe Brock's version of the events
over Jenkins' version.
7. From the video, the end of the speeding investigation can be easily determined. After briefly
returning to the officers' vehicle to check Jenkins' criminal history over the radio, Brock walked back
to Jenkins, writing something on his clipboard and telling Jenkins that he was being issued a warning
for speeding. Immediately after that, Jenkins was asked for, and refused, consent to search his
vehicle.
8. Approximately five minutes after the drug dog was requested by officers, Jenkins informed
Brock that he had traveled on Highway 19. We find no reference to Canton on the video, although
there are spots--after conclusion of the speeding investigation--where the video either skips or is
inaudible. Jenkins claims to have told Brock he traveled through Crockett, not Canton. Perusing
a standard Texas highway map, one can see a quite reasonable route from Huntsville, through
Crockett, leading to Longview--part of which route uses Highway 19.
9. Viewing the video, we are armed with enough information to determine that, if Jenkins
displayed nervousness, he did not display extreme nervousness. The video is clear enough to show
that Jenkins was not fidgeting, gesturing, or otherwise moving in a nervous manner. On the other
hand, Brock testified that Jenkins avoided eye contact and had a shaky voice, elements not clearly
refuted by the video.



 we find that a rational jury could have found that Rutherford was in knowing possession
with intent to deliver of over four grams of cocaine contained in the black Kia bag. Further, even
in reviewing the evidence in a neutral light, we do not find the jury's verdict was clearly wrong,
manifestly unjust, biased, or shocking. 

 Since the evidence was both legally and factually sufficient to establish Rutherford was in
possession of four grams or more but less than 200 grams of cocaine, we need not discuss whether
Rutherford was in knowing possession of the bag of cocaine found on top of the kitchen cabinets. 
Rutherford's points of error are overruled. 

 B. Modification of Judgment 

 The Texas Rules of Appellate Procedure give this Court authority to modify judgments
sua sponte to correct typographical errors and make the record speak the truth. Tex. R. App. P. 43.2;
French v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); Battle v. State, No. 06-07-00148-CR,
2008 WL 482343, at *3 (Tex. App.--Texarkana Feb. 25, 2008, no pet.) (mem. op., not designated
for publication) (modifying judgment to reflect proper statute under which defendant should have
been convicted); Gray v. State, 628 S.W.2d 228, 233 (Tex. App.--Corpus Christi 1982, pet. ref'd).

 The trial court's judgment indicates the statute for the offense of which Rutherford was
convicted was Section 481.123 of the Texas Health and Safety Code, which is entitled "Defense to
Prosecution For Offense Involving Controlled Substance Analogue." See Tex. Health & Safety
Code Ann. § 481.123 (Vernon Supp. 2009). Our review of the record shows that the correct statute
for the offense is Section 481.112(d) of the Texas Health and Safety Code. See Tex. Health &
Safety Code Ann. § 481.112(d). Therefore, we hereby modify the judgment to indicate that the
statute under which Rutherford was convicted is Section 481.112(d) of the Texas Health and Safety
Code.

IV. CONCLUSION

 As modified, we affirm the trial court's judgment. 

 


 Jack Carter

 Justice


Date Submitted: October 15, 2009

Date Decided: November 5, 2009


Do Not Publish


1. Malik controls "even in the absence of alleged jury charge error." Gollihar v. State, 46
S.W.3d 243, 255 (Tex. Crim. App. 2001). 
2. Over four grams of cocaine were contained in the Kia bag. It is unclear from the record
received by this Court whether 46.48 grams or 25.04 grams were found in the Kia bag. The record
shows that one of the two large quantities of cocaine was found in the kitchen and the other in the
restroom.